United States Court of Appeals,

Eleventh Circuit.

No. 96-5237.

Mathew P. LaCHANCE, Plaintiff-Appellant,

v.

DUFFY'S DRAFT HOUSE, INC., Duffy's of Jupiter, Inc., Defendants-Appellees.

July 14, 1998.

Appeal from the United States District Court for the Southern District of Florida. (No. 95-8536-CIV-KLR), Kenneth L. Ryskamp, Judge.

Before EDMONDSON, Circuit Judge, and CLARK and WELLFORD[*], Senior Circuit Judges.

CLARK, Senior Circuit Judge:

Matthew LaChance has epilepsy, and brought a claim against his former employer, Duffy's Draft House, Inc. ("Duffy's") alleging that it fired him in violation of the Americans with Disabilities Act ("ADA"). The district court found that LaChance was not a "qualified individual" within the meaning of the ADA, and granted summary judgment to the employer. LaChance filed his notice of appeal, and, subsequently, Duffy's moved for attorney's fees and costs. The district court awarded Duffy's attorney's fees and costs, but LaChance did not file a notice of appeal from the award or amend his notice of appeal. LaChance appeals the district court's grant of summary judgment and the award of attorney's fees and costs. We affirm the district court's grant of summary judgment, and hold that we have no jurisdiction over the order awarding attorney's fees and costs.

BACKGROUND

LaChance had a long history of complex partial seizures with secondary generalization, and

[*]Honorable Harry W. Wellford, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

had not been free of seizures for more than two weeks since he began having the seizures around age seven or eight. When he had a seizure, he did not lose consciousness, but would become dazed and disoriented for anywhere from a few seconds to minutes. He generally would have poor recollection of what happened during the seizure, and although sometimes he could continue functioning, at other times he would wander off seemingly in a daze. His doctor stated that people with these types of seizures are restricted from driving until they have been on medication and free of seizures for six months, and from operating heavy or dangerous machinery if the seizures are not under control.

LaChance applied for a job as a line cook with Duffy's and began that job in March, 1993. In his deposition, LaChance's supervisor stated that on LaChance's first night of work, he had two seizures: during the first he walked into a wall, and later walked into the dining room where customers were present. The supervisor also stated that on the second night LaChance worked, he had another seizure, during which he went into the bar and sat on a stool for about ten minutes. Because LaChance's medication was being changed he was having seizures more frequently than usual, and in June, 1993, the supervisor suggested that LaChance take two weeks off of work to stabilize on his new medication. LaChance agreed, and there is some dispute about whether LaChance called back after the two weeks, but viewing the facts in his favor, when he finally did reach the supervisor, he was told that because of his epilepsy he was a "liability" to the business and was discharged. LaChance brought suit alleging that Duffy's failed to make a reasonable accommodation for him and fired him in violation of the ADA.

Duffy's filed a motion for summary judgment, alleging that LaChance failed to prove that he was a "qualified individual" because he could not perform the job safely, and attached depositions of LaChance, LaChance's supervisor from Duffy's, and LaChance's doctor. In the depositions,

LaChance's supervisor stated that line cooks were required to cook on a gas flat top grill, use a fryolater filled with hot grease, and use slicing machines. LaChance's doctor stated that a person with the kind of seizures LaChance experienced should be restricted from working with flat top grills, hot ovens, fryers with boiling grease, and slicing machines. LaChance stated that he posed a risk to himself and to others while working around those appliances because of his seizures. He also stated that a reasonable accommodation would have been to keep him away from those appliances, and have him perform other duties which did not involve use of those appliances, such as prep work, but that prep work took two to three hours per shift and that line cooks at Duffy's did not do prep work.

LaChance responded to the motion for summary judgment with affidavits stating that he had worked as a cook in other restaurants without harming himself or others for some months before he was hired at Duffy's, and for 13 months after his discharge. The district court found that LaChance was not a qualified individual because he could not perform the essential functions of the job without threat of harm to himself or others. The district court held that once an employer reasonably identified an employee as posing a risk of harm, the ADA did not require the employer to accept that risk, and that it was an entirely untenable proposition that LaChance's employer or co-employees should have to bear the personal risk and legal liability that could have resulted from any accident due to the seizures. The district court found that LaChance had not requested any accommodation from Duffy's, and that Duffy's could not have accommodated LaChance in any way such that he could have still performed the essential functions of a line cook.

LaChance filed his notice of appeal from the entry of judgment in a timely fashion. Subsequently, Duffy's filed a motion for costs and attorney's fees, and, after a hearing, the district court awarded Duffy's costs and attorney's fees. LaChance did not amend his notice of appeal or file

a new notice of appeal from the order awarding costs and attorney's fees.

DISCUSSION

I. *Summary Judgment*

We review the grant or denial of summary judgment de novo, applying the same standard that the district court employed.[1] To defeat a motion for summary judgment, the nonmoving party may not rely on "mere allegations."[2] It must raise "significant probative evidence" that would be sufficient for a jury to find for that party.[3] Summary judgment may be granted if the evidence is "merely colorable."[4]

The Americans with Disabilities Act of 1990, as amended by 42 U.S.C. § 12101 *et seq.,* prohibits covered employers from discriminating against an employee based upon known physical or mental impairments, provided that the employee is a qualified individual with a disability.[5] In order to establish a *prima facie* case of discrimination under the ADA, a plaintiff must show: (1) he has a disability; (2) he is a qualified individual; and (3) he was unlawfully subjected to discrimination because of his disability.[6] A qualified individual with a disability must satisfy "the requisite skill, experience, education and other job-related requirements of the employment position," and "with or without reasonable accommodation," the individual must be able to perform

---

[1] *Parks v. City of Warner Robins, Ga.,* 43 F.3d 609, 612-613 (11th Cir.1995).

[2] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (citation omitted).

[3] *Id.* at 249, 106 S.Ct. at 2510.

[4] *Id.*

[5] 42 U.S.C. § 12112(a).

[6] *Morisky v. Broward County,* 80 F.3d 445, 447 (11th Cir.1996).

the "essential functions of the position."[7] The ADA requires employers to provide reasonable accommodations for known disabilities unless that accommodation would result in undue hardship for the employer.[8] An "accommodation" is "reasonable"—and, therefore, required under the ADA—only if it enables the employee to perform the essential functions of the job.[9] The ADA defines "essential functions" to be the fundamental job duties of the employment position, as differentiated from "marginal" functions.[10] The employee must actually perform the function the employer asserts is essential.[11]

Duffy's admits that it fired LaChance because of his epilepsy, and LaChance admits that if he had continued working at Duffy's, he would have had seizures on the job which would have posed a risk of harm to himself and others because of the appliances involved in the duties of a line cook. The issue is whether LaChance produced evidence from which a reasonable jury could conclude that he was not a direct threat.

LaChance failed to produce probative evidence that he was not a direct threat. His argument that he has performed the job safely at other places is unavailing. The evidence indicates that his employment before Duffy's consisted mainly of prep work and there is no evidence that any of those jobs involved using the kind of appliances he was required to work with at Duffy's. The affidavit from his supervisor at a job after Duffy's, indicating that he had worked around the same appliances without incident for 13 months, does not overcome his own admission and his doctor's statement that

---

[7]42 U.S.C. § 12112(a), 29 C.F.R. § 1630.2(m).

[8]*Morisky,* 80 F.3d at 447.

[9]29 C.F.R. § 1630.2(*o*)(2)(ii)(1995).

[10]*Id.* § 1630.2(n).

[11]*Id.*

he posed a risk of harm. Such evidence does not create an issue of fact. We hold that one employer's willingness to bear the risk of harm does not constitute evidence rendering other employers liable under the ADA for their refusal to bear that same risk.

LaChance argues that Duffy's failed to make an individual assessment of his disability, and incorrectly cites to *Mantolete v. Bolger*[12] as standing for the proposition that employers have a duty to gather substantial information in assessing whether a particular employee poses a substantial risk of harm. In *Mantolete,* the plaintiff brought suit under Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791, which required the federal government as employer to give "full consideration to the hiring, placement, and advancement of qualified mentally and physically handicapped persons."[13] That statute is not at issue in this case, and LaChance cites to no comparable provision in the ADA imposing such a duty on private employers.[14] The evidence shows that Duffy's considered LaChance's disability individually, rather than stereotypically, but after allowing him to work for several months determined that his level of seizures interfered with his ability to perform the essential functions of that job safely.

LaChance argues that his case is similar to that of *Doane v. City of Omaha,*[15] in which we upheld a jury verdict. In *Doane,* a jury found that a police officer who was blind in one eye was wrongfully forced to resign from officer duties and not rehired, in spite of his completion of nine years of successful and competent job performance after his blindness occurred.[16] In that case,

---

[12] 767 F.2d 1416 (9th Cir.1985).

[13] *Id.* at 1421 (citation omitted).

[14] See id. at 1425 (Rafeedie, J., concurring).

[15] 115 F.3d 624 (8th Cir.1997), *cert. denied,* --- U.S. ----, 118 S.Ct. 693, 139 L.Ed.2d 638 (1998).

[16] *Id.* at 625.

however, medical experts testified that the police officer had made adjustments to compensate for his disability, and the plaintiff had demonstrated that the job description did not specifically require the use of both eyes.[17]  LaChance's situation is more analogous to *Myers v. Hose,*[18] where the plaintiff's job as a bus driver required that he perform the duties in a way that did not threaten the safety of others.[19]  LaChance's loss of consciousness was not only a danger to himself, but due to the working environment, was a danger to others as well.

Even though there is no genuine issue of material fact as to whether LaChance was a direct threat to others, he could still have defeated Duffy's motion by producing probative evidence that reasonable accommodations were available.  The employee retains at all times the burden of persuading the jury either that he was not a direct threat or that reasonable accommodations were available.[20]  But LaChance points to no probative evidence suggesting that Duffy's could have made his work site safe.  Therefore, the district court correctly granted summary judgment to Duffy's.

II. *Costs and Attorney's Fees*

The district court granted Duffy's motion for summary judgment on September 5, 1996, and LaChance filed a timely notice of appeal on October 3, 1996.  Four days later, Duffy's filed a motion for attorney's fees and costs, which the district court granted on November 12, 1996.  LaChance did not file a notice of appeal from that order granting the motion for attorney's fees or amend his notice of appeal, but challenges that order on appeal.

Duffy's contends that LaChance's failure to amend his notice of appeal or file a notice of

---

[17]*Id.* at 628.

[18]50 F.3d 278 (4th Cir.1995).

[19]*Id.* at 282.

[20]*Willis v. Conopco, Inc.,* 108 F.3d 282, 285 (11th Cir.1997).

appeal from the order granting the motion for attorney's fees precludes LaChance from raising this issue on appeal. LaChance argues that, under Fed. R.App. P. 4(a)(4), an amendment to a notice of appeal to include an order from a motion for attorney's fees is only necessary when the district court extended the time for appeal under Rule 54.

We are aware of case law standing for the proposition that a premature notice of appeal filed after a judgment was rendered but before the issue of attorney's fees was decided was cured by a subsequent order deciding the fee issue, but do not find those cases applicable here.[21] Those cases either adhered to the theory that attorney's fees in certain cases were "integral to the merits" of a case rather than a collateral issue, or were decided under the doctrine that a premature appeal was reviewable where a subsequent judgment of the district court effectively terminated the litigation.[22] Those cases were decided before the Supreme Court's decision in *Budinich v. Becton Dickinson & Co.,*[23] which held that attorney's fees is always a collateral issue. Moreover, those cases are factually distinguishable, as the notices of appeal were filed after the motions for attorney's fees were made but before final orders on the motions had been issued.[24]

Rather, the principle of law that we find controlling in this case comes from *McDougald v. Jenson.*[25] In that case, the defendant filed a notice of appeal from a temporary restraining order and

---

[21]*See Bank South Leasing, Inc. v. Williams* 778 F.2d 704, 705 (11th Cir.1985); *Norman v. Housing Authority of the City of Montgomery,* 836 F.2d 1292, 1296 (11th Cir.1988); *Robinson v. Tanner,* 798 F.2d 1378, 1385 (11th Cir.1986), *cert. denied,* 481 U.S. 1039, 107 S.Ct. 1979, 95 L.Ed.2d 819 (1987).

[22]*Robinson,* 798 F.2d at 1382.

[23]486 U.S. 196, 200, 108 S.Ct. 1717, 1721, 100 L.Ed.2d 178 (1988).

[24]*See Norman,* 836 F.2d at 1295; *Bank South,* 778 F.2d at 705.

[25]786 F.2d 1465 (11th Cir.1986), *cert. denied,* 479 U.S. 860, 107 S.Ct. 207, 93 L.Ed.2d 137 (1986).

declaratory judgment against her.[26] After the notice of appeal had been filed, the parties entered into a stipulation that included a permanent injunction and preserved all appellate rights for both parties.[27] The district court approved the stipulation, dissolved the TRO, and entered the permanent injunction, from which the defendant did not file a notice of appeal.[28]

This court found that it lacked jurisdiction over an appeal of the permanent injunction because the stipulation containing the injunction had not been entered into when the defendant filed her notice of appeal, and the notice of appeal made no reference to the permanent injunction.[29] The court noted that Fed. R.App. P. 3(c) required that a notice of appeal "designate the judgment, order or part thereof appealed from," and that failure to fulfill this requirement ordinarily precluded the appellate court from reviewing any judgment or order not specified in the notice of appeal.[30] The court further noted that Rule 3 was liberally construed and mistakes in designation of the orders to be appealed were not fatal where it was clear that the "overriding intent was effectively to appeal."[31] Appeals of orders entered prior to or contemporaneously with the order properly designated in the notice of appeal had been allowed in the past, but the *McDougald* defendant could not have intended her notice of appeal to cover the permanent injunction because that order had not yet been entered when the notice of appeal was filed.[32]

---

[26]*Id.* at 1471.

[27]*Id.*

[28]*Id.*

[29]*Id.* at 1473-74.

[30]*Id.* at 1474 (citation omitted).

[31]*Id.* (citation omitted).

[32]*Id.* at 1474.

The Supreme Court found that a *pro se* prisoner's informal brief in response to a briefing order qualified as the "functional equivalent" of the notice of appeal.[33] The Court stated that Fed. R.App. P. 3(a) provides that "[a]n appeal ... from a district court to a court of appeals shall be taken by filing a notice of appeal ... within the time allowed by Rule 4," and that although the time of appealability is jurisdictional and strictly applied, the requirements of Rule 3 are construed liberally.[34] The Court held that "when papers are "technically at variance with the letter of [Rule 3], a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires.' "[35]

In *Intel Corp. v. Terabyte Intern., Inc.,*[36] the appellant filed a notice of appeal from the judgment before the district court ruled on a motion for attorney's fees, but did not file a notice of appeal from the order granting an award of attorney's fees.[37] The Ninth Circuit held that the order granting attorney's fees was reviewable on appeal only because the appellant's opening brief, which had been filed within 30 days of the final order on attorney's fees, satisfied the requirements of Rule 3.[38]

In *Pope v. MCI Telecommunications Corp.,*[39] the Fifth Circuit refused to review the district court's grant of attorney's fees, where in his notice of appeal the appealing party had explicitly noted

---

[33]*Smith v. Barry,* 502 U.S. 244, 245, 112 S.Ct. 678, 680, 116 L.Ed.2d 678 (1992).

[34]*Id.* at 247-48, 112 S.Ct. at 681.

[35]*Id.* at 248, 112 S.Ct. at 681-82 (quotation omitted).

[36]6 F.3d 614 (9th Cir.1993).

[37]*Id.* at 617.

[38]*Id.* at 618.

[39]937 F.2d 258 (5th Cir.1991), *cert. denied,* 504 U.S. 916, 112 S.Ct. 1956, 118 L.Ed.2d 558 (1992).

the district court's orders he was appealing without mentioning the order granting attorney's fees.[40] The court found that because the appellant chose to designate specific determinations in his notice of appeal rather than simply appeal the entire judgment, the omission in the notice of appeal of any mention of the order awarding attorney's fees precluded appellate review of that order.[41]

Like the defendant in *McDougald,* LaChance filed his notice of appeal before the motion for attorney's fees had been filed, and thus, his notice of appeal could not have been intended to cover the order awarding attorney's fees. LaChance filed a civil appeal statement on November 4, 1996, but that statement specifically indicated that he was appealing the district court's grant of summary judgment and did not mention the district court's order awarding attorney's fees. LaChance's argument that Rule 4 does not apply to him is irrelevant because he failed to meet the requirements of Rule 3. Because LaChance failed to amend his notice of appeal to include the order granting attorney's fees, or file anything within 30 days of the order granting attorney's fees that mentioned that order, the order awarding attorney's fees is not reviewable by this court.

AFFIRMED.

III. *Appellees' Motion for Attorney's Fees*

Duffy's has filed a motion for attorney's fees. Rule 38 of Federal Rules of Appellate Procedure provides that "[i]f a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee."[42] However, attorney's fees should be granted to a defendant in a civil rights action only "upon a finding that the plaintiff's action was

---

[40]*Id.* at 266.

[41]*Id.*

[42]*Pelletier v. Zweifel,* 921 F.2d 1465 (11th Cir.), *cert. denied,* 502 U.S. 855, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991).

frivolous, unreasonable, or without foundation."[43]  Given that standard, we believe that a grant of

attorney's fees would be inappropriate in this case, and the motion is DENIED.

---

[43]*Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978).