[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 18, 2009
THOMAS K. KAHN
CLERK

No. 08-12222
Non-Argument Calendar

_____

D. C. Docket No. 06-00125-CV-FTM-34SPC

AARON K. MARSH,

Plaintiff-Appellant,

versus

FLORIDA DEPARTMENT OF CORRECTIONS,
SECRETARY, DOC,
DESOTO CORRECTIONAL INSTITUTION,
MR. COOK,
D.O.C.  Captain,
FLORIDA DEPARTMENT OF CHILDREN & FAMILIES, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 18, 2009)

Before CARNES, BARKETT, and WILSON, Circuit Judges.

PER CURIAM:

Aaron K. Marsh, a civil detainee under the Jimmy Ryce Act, Fla. Stat. §§ 394.910-932[1], appeals from the judgment dismissing his 42 U.S.C. § 1983 action against various members of the management and staff of the Florida Civil Commitment Center ("FCCC")[2], where he currently resides. In his amended complaint, Marsh alleges that FCCC's policy prohibiting the practice of martial arts infringes upon his First Amendment right to freely exercise his Zen Buddhist religion. He explains that he practices Nisei GoJu-Ryu Karate, a form of martial arts that is practiced by Zen Buddhists as a form of spiritual enlightenment. Marsh's complaint also alleges that FCCC staff members had retaliated against him because of earlier civil rights complaints which he had filed.

On appeal, Marsh argues that the district court erred in granting the defendants' motion for summary judgment based on the court's finding that FCCC's policy prohibiting the practice of martial arts by all residents was

---

[1] Under Florida law, persons who are identified as "sexually violent predators" can be civilly committed on an involuntary basis to a secure facility for long-term "control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." Fla. Stat. § 394.917(2).

[2] Marsh originally named forty defendants, including various state agencies and officials, many of whom the district court dismissed from this action without prejudice. Marsh is not challenging the district court's dismissal as to these defendants.

reasonably related to the facility's legitimate security interests and hence did not violate Marsh's right to freedom of religious expression under the First Amendment. Marsh argues that as a civil commitment detainee he enjoys constitutional rights greater than criminally detained prisoners and thus the district court should have evaluated his freedom of religious expression claims under a strict scrutiny analysis and not under the more deferential "reasonableness" standard articulated by the Supreme Court in Turner v. Safley, 482 U.S. 78 (1987).

We "review[] a district court's grant of summary judgment de novo, applying the same legal standards used by the district court." Galvez v. Bruce, 552 F.3d 1238, 1241 (11th Cir. 2008). "Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of fact and compels judgment as a matter of law." Swisher Intern., Inc. v. Schafer, 550 F.3d 1046, 1050 (11th Cir. 2008); Fed. R. Civ. P. 56(c).

Normally, a law which is neutral and generally applicable does not violate the free exercise clause of the First Amendment, even if the law has an incidental effect on religious practices. Church of the Lukumi Babalu Aye v. City of Hialeah, 508 U.S. 520, 531(1993). By contrast, laws that do not satisfy the requirements of neutrality and general applicability must be narrowly tailored to advance a compelling government interest. Id. at 531-32.

3

Free exercise of religion claims brought by prisoners, however, are analyzed under a more deferential standard, the reasonableness test articulated by the Supreme Court in <u>Turner</u>. <u>See</u> <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 349-50 (1987). The <u>Turner</u> Court listed four factors to consider in determining if a prison regulation is reasonable: "(1) the connection between the prison regulation and a legitimate, neutral government interest, (2) the presence or absence of alternatives for the prisoners to exercise their claimed right, (3) the effect of unfettered exercise of the right on other inmates, guards, and the allocation of prison resources, and (4) the presence or absence of ready alternatives." <u>Onishea v. Hopper</u>, 171 F.3d 1289, 1300 n. 17 (11th Cir. 1999). The Supreme Court has stated that prison regulations should be upheld against constitutional challenges so long as the regulations are reasonably related to legitimate penological interests. <u>Turner</u>, 482 U.S. at 89.

Although the district court concluded that the reasonableness standard in <u>Turner</u> precluded Marsh's free exercise claim, this Court previously has not addressed whether <u>Turner</u> applies to cases involving civil detainees as it does to criminal prisoners. The Supreme Court has recognized that civil detainees are generally "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." <u>Youngblood v. Romeo</u>, 457 U.S. 307, 322 (1982). Thus, as a civil detainee, Marsh

is arguably entitled to more protection than a criminal prisoner with regard to his First Amendment free exercise claim.

Nonetheless, we need not resolve whether the reasonableness standard of Turner controls the resolution of Marsh's free exercise claim, because we conclude that even were we to apply the constitutional protections afforded to non-detained or non-imprisoned individuals in the context of a free exercise claim, FCCC's policy against the practice of martial arts does not violate Marsh's rights under the First Amendment. FCCC's policy is both neutral and generally applicable. See Church of the Lukumi Babalu Aye, 508 U.S. at 531. The policy prohibiting the practice of martial arts, as described in the FCCC Resident Handbook, applies to all of the facility's residents. Furthermore, the policy is neutral in that it does not facially discriminate on the basis of religion, see id. at 533, nor has Marsh presented evidence that the "object of [the FCCC policy] is to infringe upon or restrict [the] practice[] because of [its] religious motivation. . . ," id. Rather, FCCC presented evidence that its policy prohibiting the practice of martial arts is to "maintain order and security" within the facility because martial arts practice "poses a potential security threat to staff and other residents." Because the FCCC policy is neutral and generally applicable, it need not be justified by a compelling

interest nor be narrowly tailored to that interest.[3]

Marsh also argues that the district court erred in dismissing his First Amendment retaliation claim. In order to state a First Amendment retaliation claim, "a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005). Marsh stated that FCCC staff members have harassed him and placed him in seclusion and restraints in retaliation for other civil rights actions which he has filed. Nevertheless, his complaint fails to allege any facts showing a causal connection between the defendants' conduct and Marsh's earlier cases. Also, Marsh has not alleged any facts showing that the retaliatory actions have had an adverse impact on his ability to file civil rights actions with the

_____

[3] Marsh also alleged a violation of the Religious Freedom Restoration Act of 1993 ("RFRA"), which sought to prohibit the government from burdening a person's exercise of religion absent a compelling government interest even with regard to laws of general applicability. See Cutter v. Wilkinson, 544 U.S. 709, 714 (2005). However, in City of Boerne v. Flores, 521 U.S. 507 (1997), the Supreme Court invalidated the RFRA as applied to the states, see Cutter, 544 U.S. at 715, thus, the RFRA is inapplicable to Marsh's free exercise claim. Although Marsh also states in his brief that FCCC violated his rights under another federal statute designed to accord heightened protection to the exercise of religion, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, we are unable to address whether he would be entitled to relief under RLUIPA as he did not allege any violation of RLUIPA in his complaint, but rather has mentioned this statute for the first time in his initial brief. See Hurley v. Moore, 233 F.3d 1295, 1297 (11th Cir. 2000) ("Arguments raised for the first time on appeal are not properly before this Court.").

district court.[4]

Accordingly, for the reasons stated above, we affirm the district court's order.

**AFFIRMED.**

---

[4]Marsh also challenges the magistrate's denial of his discovery motions. However, he failed to object to those rulings in the district court, and, therefore, has waived any challenge to those rulings on appeal. Rule 72(a); Maynard v. Bd. of Regents of Div. Of Univs. of Fl. Dept. of Educ., 342 F.3d 1281, 1286 (11th Cir. 2003). Marsh also challenges the magistrate's denial of his "Motion for Extension of Time to File Reconsideration or Objection to the District Court's Order." Because this is not a final order, and because Marsh did not designate it for review in his notice of appeal, we lack jurisdiction to consider it. See Donovan v. Sarasota Concrete Co., 693 F.2d 1061, 1066-67 (11th Cir. 1982); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir.1998). Moreover, Marsh likewise failed to object to this ruling before the district court.