[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11704
Non-Argument Calendar

_____

D.C. Docket No. 7:16-cv-00130-HL

DAVID W. MONDS,

Plaintiff-Appellant,

versus

QUITMAN GEORGIA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(March 29, 2019)

Before WILSON, JORDAN, and JULIE CARNES, Circuit Judges.

PER CURIAM:

David Monds, who is African-American, appeals *pro se* the district court's grant of summary judgment in favor of the City of Quitman, Georgia, on his race discrimination claims brought pursuant to Title VII, 42 U.S.C. § 2000e, et seq, and 42 U.S.C. § 1981.  Mr. Monds also appeals the district court's grant of costs, pursuant to Fed. R. Civ. P. 54(d)(1).

For the following reasons, we affirm in part and dismiss in part for lack of jurisdiction.

## I

When the City of Quitman's City Clerk and Treasurer, Ms. Janice Jarvis, announced her retirement, the City sought to fill her position.  The City posted a job announcement, prepared by the City Manager, Mr. Daniel Herring (a white male), and the retiring Ms. Jarvis, who ensured the posting adequately explained the job duties.  The job posting stated, in pertinent part:

> Maintaining primary ownership over cash, debt and investment management and internal controls; manages bank relationships and bank account management, including overall account maintenance; oversees debt issuance, service and compliance, including reporting and disclosure; develops internal controls and financial policies to promote effective governance and accurate receipts, disbursements and investments; coordinates external audit activities and audit preparation; researches technical accounting issues, ensures compliance with GAAP and prepares financial reports; prepares and delivers monthly internal management reports to communicate cash flow, receipts, disbursements, investments and debt management activity; assists in the

2

preparation of annual operation budget; ensures compliance with all budgetary requirements . . . .

D.E. 11-11 at 124. Under "Minimum Requirements" the job posting stated: "Bachelor Degree in Business or Public Administration, Accounting, Finance or related field. At least five (5) years experience in local government accounting and management preferred. Comparable combinations of education and experience will be considered." *Id.*

Mr. Monds applied for the position. He was one of five candidates Mr. Herring selected for interviews by a panel consisting of himself, Mr. Virgil Walker, Ms. Annie Bowers, and Mr. Kendall Blankumsee.[1]

Mr. Monds possesses a high school diploma, a Bachelor of Arts degree in Criminal Justice, and a Master of Science degree in Administration. He is a United States Air Force Veteran with ten years' experience with the Department of Justice's Federal Bureau of Prisons, where he worked in various human resources positions. Mr. Monds spent six years in his last position as Human Resources Manager for the Bureau of Prisons.

Ms. Brunhilde Hudson, who was ultimately selected for the position over Mr. Monds and is a white woman, possesses a GED equivalent from her home country

---

[1] Mr. Blankumsee, the only African-American member of the panel, owned and operated a funeral home which was engaged in business dealings with Mr. Monds. Over concerns that their business dealings presented an improper conflict of interest, Mr. Blankumsee recused himself from Mr. Monds' interview. Mr. Blankumsee participated in the other four interviews and in the final hiring decision.

3

of Germany.  She worked for over fourteen years in various bookkeeping and accounting roles for a quasi-governmental agency.  Mr. Herring recommended that the City Council hire Ms. Hudson, and after a formal motion and discussion, the Council unanimously voted to hire Ms. Hudson as the next City Clerk and Treasurer.

During his interview, Mr. Monds was asked "What is GAAP?" Knowledge of Generally Accepted Accounting Principles was indicated in the job description, but Mr. Monds was unable to answer the question.  The remainder of the interview focused on his human resources experience.  During her interview, Ms. Hudson discussed her experience in accounting and bookkeeping and had evidently prepared for the interview by researching the City's budget.  She was not asked about GAAP because she brought it up on her own initiative.

After the City Council selected Ms. Hudson, Mr. Monds filed a charge with the Equal Employment Opportunity Commission ("EEOC"), which issued him a Notice of Right to Sue.  Mr. Monds then filed a complaint against the City in the United States District Court for the Middle District of Georgia, alleging intentional discrimination on the basis of race.  In its motion for summary judgment, the City argued that (1) Mr. Monds failed to make a prima facie case of discrimination because his lack of financial and accounting experience rendered him unqualified; (2) even if he was qualified, the City had a legitimate, nondiscriminatory reason for selecting Ms. Hudson (that she was more qualified); (3) he failed to show that this

4

reason was pretextual; and (4) he produced no other evidence of racial discrimination.

Mr. Monds responded with six arguments to show pretext. As he put it:

(1) Herring's discriminatory recommendation; (2) deviated from the established hiring practice; (3) Council members could not believe Bru[n]hilde was more qualified; (4) Plaintiff's superior qualifications; (5) Mayor Brown admitted the Plaintiff's race was a factor; and (6) defendant's reason for not hiring [Plaintiff] shifted over time.

D.E. 16-1 at 18 (quoting Mr. Monds' brief).

The district court concluded that Mr. Monds was qualified for the position and stated a prima facie case of discrimination.  It also found that the City established a legitimate, non-discriminatory justification for failing to hire Mr. Monds—that it found Ms. Hudson to be more qualified.  Finally, the district court found that Mr. Monds had failed to produce evidence that the City's justification was pretextual.  The district court granted summary judgment to the City and accordingly awarded costs.  After the City filed its bill of costs, but before the district court entered its order taxing costs, Mr. Monds filed his notice of appeal.

**II**

We review a district court's grant of summary judgment de novo, viewing the record as a whole and drawing all reasonable inferences in favor of the non-moving party.  *See Battle v. Bd. of Regents for Ga.*, 468 F.3d 755, 759 (11th Cir. 2006).  Summary judgment is only appropriate when there are no genuine disputes as to any

5

material facts, and the movant is entitled to judgment as a matter of law.  *See id.*; Fed. R. Civ. P. 56(a).

## A

Title VII of the Civil Rights Act of 1964 prohibits employers from failing to hire a person "because of such individual's race, color, sex, ethnicity, or national origin. . . ."  42 U.S.C. § 2000e-2(a)(1).  Similarly, 42 U.S.C. § 1981 ensures that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ."  In the employment discrimination context, both Title VII and § 1981 use the same legal framework and impose the same evidentiary requirements.  *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).  Thus, we analyze Mr. Monds' Title VII and § 1981 claims together.  *See id.*

A Title VII plaintiff bears the ultimate burden of persuading a jury, by a preponderance of the evidence, that he was treated in a discriminatory manner.  *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).  When, as here, the plaintiff relies on circumstantial evidence to prove discriminatory intent, we employ the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  First, a plaintiff must establish a prima facie failure-to-hire case by showing that he belonged to a protected class, that he applied for and was qualified for an available position, that he was rejected, and that the employer filled the position with someone outside the plaintiff's class.  *See Walker*

6

*v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1274–75 (11th Cir. 2002).  The

plaintiff's initial burden is not onerous, and need only "establish facts adequate to

permit an inference of discrimination."  *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th

Cir. 1997).

If the plaintiff succeeds, the burden shifts to the defendant to "articulate a

legitimate, nondiscriminatory reason for the adverse employment action.*"  Quigg v.*

*Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1237 (11th Cir. 2016).  The employer need

only produce evidence "sufficient to raise a genuine issue of fact as to whether it had

a legitimate reason for not hiring the plaintiff."  *Turnes v. AmSouth Bank, N.A.*, 36

F.3d 1057, 1061 (11th Cir. 1994).

If the defendant satisfies this "exceedingly light" burden, the presumption of

discrimination directed by the *McDonnell Douglas* framework "drops out of the

case."  *Id.*  At this point, the plaintiff must rebut the employer's reasons by showing

"both that the reason was false, and that discrimination was the real reason."

*Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 (11th Cir. 2018) (citations and

internal quotation marks omitted).  The plaintiff does so by demonstrating "such

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

employer's proffered legitimate reasons for its action that a reasonable factfinder

could find them unworthy of credence."  *Combs v. Plantation Patterns*, 106 F.3d

1519, 1538 (11th Cir. 1997) (internal citations and quotation marks omitted).  The

plaintiff may not "recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc). If the employer's reason is one "that might motivate a reasonable employer," the plaintiff must "meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Id.* We address each part of the framework in turn.

We agree with the district court that Mr. Monds established a prima facie case of discrimination. Mr. Monds, a black man, was qualified for the job he applied for, but the City selected a white woman over him. *See Walker*, 286 F.3d at 1274. The burden then shifted to the City to articulate a legitimate, nondiscriminatory reason for hiring Ms. Hudson over Mr. Monds. *See Turnes*, 36 F.3d at 1061.

We also concur with the district court that the City satisfied its burden. The City's justification for hiring Ms. Hudson was that she was the most qualified candidate, which we have held is a legitimate, nondiscriminatory reason. *See, e.g., Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 (11th Cir. 2001). Thus, the burden shifted to Mr. Monds to show that the reason proffered was pretextual.

The district court concluded that Mr. Monds failed to "meet that reason head on and rebut it" rather than "simply quarrel[ ] with the wisdom of that reason." *Chapman*, 229 F.2d at 1030. In his attempt to rebut the City's reason, and challenge the district court's ruling, Mr. Monds argues that: (1) he is more qualified than Ms.

8

Hudson; (2) Ms. Hudson is not qualified; (3) the City Council deviated from the standard hiring process by selecting Ms. Hudson; (4) the City's reason for hiring Ms. Hudson shifted over time; (5) Mr. Herring recommended him in a discriminatory fashion; (6) the "black Council members were excluded from his interview"; and (7) the Mayor admitted that he believed race was a factor in the Council's decision. We consider each argument in turn.[2]

We will consider Mr. Monds' first two arguments together, because they are interrelated. Although a disparity in qualification between the hired employee and the plaintiff may evidence pretext, the disparity must "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *See Cooper v. S. Co.*, 390 F.3d 695, 732 (11th Cir. 2004) (internal quotation marks omitted), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457–58 (2006).[3] We

---

[2] Mr. Monds cites to case law involving the "cat's paw" theory to support his proposition that "[Mr.] Herring's discriminatory recommendation" evidences pretext. But this is not a cat's paw case. The cat's paw theory applies only when actual decision-makers blindly rely on the recommendation of a discriminatory non-decision-maker without undertaking an independent investigation. *See Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999). Here, the City Council was the decision-maker, and did not blindly rely on Mr. Herring's recommendation to hire Ms. Hudson, whether discriminatory or not. There is no evidence in the record showing that the decision to hire Ms. Hudson was the result of anything but discussion and deliberation by the City Council. The City Council was not a "mere conduit" for Mr. Herring's recommendation. *See id.*

[3] The district court relied on a standard that was first articulated in *Cooper*: that the "disparity in qualifications [be] so apparent as to virtually jump off the page and slap you in the face." *See Monds v. City of Quitman*, No. 7:16-CV-130 (HL), 2018 WL 1528212, at *8 (M.D. Ga. Mar. 28, 2018) (internal quotation marks omitted). In *Ash*, however, the Supreme Court disapproved of

addressed a similar argument in *Cofield*, where an employee argued that the disparity in qualifications between herself and the man selected for the promotion evidenced pretext. *See* 267 F.3d at 1268. Both candidates had managerial experience, and while the plaintiff possessed more years of supervisory experience, the experience of the person selected was at a higher level of management. Both candidates had experience in areas the other lacked. Although we noted that the plaintiff may have been justified in believing she was more qualified for the position, the disparity between the two was not significant enough to evidence pretext. *Id.* at 1269.

Likewise, here the disparity between the qualifications of Mr. Monds and Ms. Hudson is not "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen [Ms. Hudson] over [Mr. Monds]." *Cooper*, 390 F.3d at 732. Ms. Hudson possessed less formal education than Mr. Monds but she had years of more relevant experience. She worked over four years as a quasi-governmental organization's finance director, where she supervised accounting strategies and procedures, budgeting, and preparation of financial statements. Before that, she held positions as a bookkeeper, inventory control clerk, and information technology administrator, each of which required involvement with

---

that test, stating that "[t]he visual image of words jumping off the page to slap you (presumably a court) in the face is unhelpful and imprecise as an elaboration of the standard for inferring pretext from superior qualifications." 546 U.S. at 457. Since *Ash*, our Circuit has relied on the reasonable person test, and we apply that test here.

10

the organization's financials.  Mr. Monds lacked significant experience in finance.

Despite Mr. Monds' more extensive education, Ms. Hudson had more experience in

an applicable field.  Although Mr. Monds may be justified in believing he was more

qualified because of his formal education, as a matter of law, the disparity between

their qualifications is too slight to demonstrate pretext.  *See Cofield*, 267 F.3d at

1268–69.  *See also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1090 (11th Cir.

2004) (concluding that a disparity did not evidence pretext when the plaintiff lacked

director and customer service experience as compared to the selected person,

although she made "self-serving assertions about her . . . leadership abilities . . . .").[4]

Ms. Hudson was qualified for the position of City Clerk.  As to qualifications,

the job posting stated: "Bachelor Degree . . . At least five (5) years experience in

local government accounting and management preferred.  Comparable combinations

of education and experience will be considered."   This language allowed for

flexibility in hiring someone who lacked a bachelor's degree but made up for it in

relevant experience.  And, as discussed above, Ms. Hudson possessed fourteen years

of financial experience in a quasi-government office.  Mr. Monds cannot defeat

---

[4] Mr. Monds produced evidence that he had some experience with financials while working for a few months as a Waffle House manager, but this experience was not included on his resume or Clerk application.  He also states that he took accounting courses in college, but again, he neglected to mention that on his resume, in his application, or at his interview.  The City could not consider Mr. Monds' relevant qualifications if it did not know he possessed them.

summary judgment by "quarrel[ing] with the wisdom" of the City's determination that Ms. Hudson's education and experience qualified her for the position.  *See Chapman*, 229 F.2d at 1030.

The City Council also did not "deviate[ ] from the established hiring practice" by allowing Ms. Hudson to apply without a bachelor's degree or five years' experience in local government accounting.  As discussed above, a bachelor's degree and five years' experience were flexible preferences, not stringent requirements. Moreover, the record indicates that every previous City Clerk lacked a bachelor's degree.  A deviation from standard hiring procedure can evidence pretext, *see Walker*, 286 F.3d at 1279, but Mr. Monds has pointed to no hiring practice or standard from which the City deviated.  He simply argues that the "white applicant was exempt from possessing a bachelor degree." As discussed above, that contention ultimately fails.

Mr. Monds' next argument—that the City's justifications "shifted over time"—is also not supported by the record.  Shifting justifications may evidence pretext, *see Cleveland v. Home Shopping Networking, Inc.*, 369 F.3d 1189, 1195 (11th Cir. 2004), but only when the justifications actually shift.  *See id.* ("When pressed on the reason why . . . Concello shifted from a contract, to a non-compete agreement, to an unwritten policy, to a standard industry practice.").  In support of this argument, Mr. Monds cites to several documents in the record, but does not

12

identify any specific facts to support his contention that the City shifted its position. *See* D.E. 11-1 at 10; 11-11 at 81, 126, 145. In fact, the cited documents suggest that, since responding to the EEOC charge, the City has maintained that Ms. Hudson was considered the best qualified person for the job.

Mr. Monds points to different circumstances during the hiring process that he alleges show pretext: (1) Ms. Hudson was not asked about GAAP; (2) "black Council members were excluded from [his] interview"; and (3) "Mayor Brown admitted that [Mr.] Monds' race was a factor." Mr. Monds fails, however, to support these assertions with evidence.

Although it is true that Ms. Hudson was not asked about GAAP and Mr. Monds was, it is not because Ms. Hudson received special treatment. In the interview notes, under the "What is GAAP" question, the Council noted that Ms. Hudson "Volunteered info . . . during interview" demonstrating her knowledge of GAAP. The City did not need to redundantly ask her about GAAP when she had already demonstrated her knowledge of the concept. Further, the other candidates— who were white—were asked about GAAP. Mr. Monds cannot point to any evidence showing he was treated differently in his interview than the other candidates. We note that the record does suggest that Ms. Hudson was more prepared for her interview than other applicants, including Mr. Monds.

13

There is likewise no evidence in the record that "black Council members were excluded" from Mr. Monds' interview.  Only one of the two black councilmembers, Mr. Blankumsee, was part of the interview process for *any* of the candidates, [and he recused himself from Mr. Monds' interview because of their ongoing business relationship.  He was not "excluded" in the manner Mr. Monds suggests. Importantly, both black councilmembers remained part of the decision-making process and voted to hire Ms. Hudson.

Mr. Monds also cannot point to any evidence that "the Mayor admitted [Mr.] Monds' race was a factor."[5]  The Mayor answered affirmatively when asked if he believed that race factored into the hiring decision, but he did not testify to a single event, statement, or occurrence that informed his conclusion.  On this record, such speculation—the Mayor's unsupported subjective belief—does not raise a genuine issue of material fact from which a reasonable jury could infer pretext and discrimination.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  *See*

---

[5] The district court stated that any statements by the Mayor are irrelevant.  This is not necessarily the case. *See* Fed. R. Evid. R. 401. The Mayor was involved in the discussions regarding the candidates and his testimony could be relevant to show discriminatory animus.  Title VII imposes no special evidentiary requirement, *see Desert Palace, Inc. v. Costa*,  539 U.S. 90, 99 (2003), and a non-decision-maker's testimony based upon his personal knowledge can be useful in proving discriminatory intent. *See, e.g., Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) (acknowledging a co-worker's testimony of the disparity between the company's treatment of him versus the plaintiff).  Here, although Mr. Herring was not a decision-maker, his testimony is relevant in evaluating the elements of Mr. Monds' claims.

*also Cooper*, 390 F.3d at 745 (holding that an employee's conclusory testimony based on her subjective belief could not preclude summary judgment against her).

In sum, Mr. Monds failed to meet the City's legitimate, nondiscriminatory reason head-on and rebut it by showing both that the "reason was false, and that discrimination was the real reason." *Hornsby-Culpepper*, 906 F.3d at 1312. Mr. Monds felt he was more qualified than Ms. Hudson, but "[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991). The City articulated a legitimate, nondiscriminatory reason for hiring Ms. Hudson over Mr. Monds, a reason Mr. Monds failed to rebut. Thus, the district court did not err by granting summary judgment to the City of Quitman.

**B**

We now address Mr. Monds' appeal of the district court's award of costs to the City. We conclude that we lack jurisdiction to hear Mr. Monds' appeal of the clerk's order taxing costs.

A notice of appeal requires the appealing party to "designate the judgment, order or part thereof appealed from." Fed. R. App. P. 3(c)(1)(B). Although the time for appeal is jurisdictional and strictly applied, *see* Fed. R. App. P. 4, the Supreme Court has held that the requirements for Rule 3, though also jurisdictional in nature, should be construed liberally. *See Smith v. Barry*, 502 U.S. 244, 248 (1992). Thus,

15

if a brief satisfies the requirements of Rule 3(c) and is timely, it may function as a notice of appeal. *Id.* at 248–49.

Following *Smith*, we have held that when there is an overriding intent to appeal, a failure to strictly satisfy the requirements of Rule 3 is not fatal. *See, e.g., McDougald v. Jensen*, 786 F.2d 1465, 1474 (11th Cir. 1986). But when a notice of appeal is filed *before* the order appealed from is issued, the party could not have intended to appeal that order, because it did not exist when the notice of appeal was filed. *Id.*

Two cases are instructive. In *McDougald*, 786 F.2d 1465, 1471 (11th Cir. 1986), a mother timely appealed a temporary restraining order and declaratory judgment against her. Following the filing of the notice of appeal, the district court entered a permanent injunction. The mother sought review of the permanent injunction but did not amend her notice of appeal or file a new notice of appeal following the grant of the permanent injunction. We concluded that we did not have jurisdiction to hear the appeal of the permanent injunction. Because the order granting the permanent injunction did not exist at the time the mother filed the notice of appeal, she could not have intended to appeal that order. *See id.* at 1474.

Similarly, in *LaChance v. Duffy's Draft House Inc.*, 146 F.3d 832, 834 (11th Cir. 1998), a former employee filed a notice of appeal after a district court granted summary judgment to the employer. Soon thereafter, the employer filed a motion

16

for attorney's fees and costs, which the district court subsequently granted.  The employee did not amend his notice of appeal to include the grant of attorney's fees and costs, but nonetheless sought review of that order.  We held that we did not have jurisdiction.  *See id.* at 838.  Because the order granting attorney's fees and costs did not exist at the time the notice of appeal was filed, the employee could not have intended to appeal it.

Here, following our precedent in *LaChance* and *McDougald*, we do not have jurisdiction over Mr. Monds' appeal of the order taxing costs to the City.  The district court entered judgment and awarded costs to the City, *see* D.E. 20, and the City then filed its bill of costs.  *See* D.E. 21.  But before the clerk entered an order taxing costs, Mr. Monds filed his notice of appeal.  D.E. 22.  We cannot exercise jurisdiction over Mr. Monds' appeal of the clerk's order taxing costs, because it did not exist at the time of the filing of the notice of appeal.  *See LaChance*, 146 F.3d at 838.  Thus, Mr. Monds could not have intended to appeal it.  *See id.* [6]

---

[6] The City argues that Mr. Monds has waived the issue of costs on appeal because he failed to object to the order taxing costs within the time allowed under Fed. R. Civ. P. 54(d)(1).  Many of our sister circuits have addressed this issue.  Some have concluded that a failure to timely object within the period allowed by Rule 54 waives the issue on appeal. *See Bloomer v. UPS*, 337 F.3d 1220, 1220–21 (10th Cir. 2003); *Rowe v. Maremont Corp.*, 850 F.2d 1226, 1244 (7th Cir. 1988). Other have held only that a complete failure to object at the district court level waives the issue on appeal. *See Ahlberg v. Chrysler*, 481 F.3d 630, 638–39 (8th Cir. 2007); *Walker v. California*, 200 F.3d 624, 625–26 (9th Cir. 1999); *Prince v. Poulos*, 876 F.2d 30, 34 (5th Cir. 1989).  Here, because we lack jurisdiction, we do not reach the question of waiver.

## III

In conclusion, the district court properly ruled that Mr. Monds failed to rebut the City's legitimate, nondiscriminatory reason for hiring Ms. Hudson. And because Mr. Monds filed his notice of appeal before the district court taxed costs, we lack jurisdiction to consider Mr. Monds appeal of that order. Therefore, we affirm the district court's order granting summary judgment to the City of Quitman and dismiss the appeal of the order taxing costs for want of jurisdiction.

**AFFIRMED IN PART** and **DISMISSED IN PART.**