[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 11, 2004
THOMAS K. KAHN
CLERK

———————————————————

No. 03-11924

———————————————————

D. C. Docket No. 01-CV-01467-T-TBM

ALICE T. CLEVELAND,

Plaintiff-Appellant-
Cross-Appellee,

versus

HOME SHOPPING NETWORK, INC.,

Defendant-Appellee-
Cross-Appellant.

————————————————

Appeals from the United States District Court
for the Middle District of Florida

————————————————

**(May 11, 2004)**

Before TJOFLAT, BARKETT and SILER[*], Circuit Judges.

---

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

SILER, Circuit Judge:

In this Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, termination case, plaintiff Alice Cleveland appeals the district court's judgment as a matter of law to the Home Shopping Network ("HSN"), after the jury returned a verdict finding HSN had impermissibly fired Cleveland from her television show-hosting job because of her disability. Particularly, Cleveland argues that the district court made credibility findings and viewed the evidence in the light most favorable to HSN when it found Cleveland had failed to rebut HSN's stated non-discriminatory reason of firing her because she participated in an unauthorized infomercial. We agree and REVERSE the lower court's judgment as a matter of law for HSN.

HSN cross-appeals, in the event we reverse the judgment as a matter of law, claiming the district court should have granted it a judgment as a matter of law at the close of Cleveland's case because she failed to put forth evidence of a prima facie case of discrimination. HSN also appeals the denial of its motion for a new trial based on the improper conduct of Cleveland's counsel, excessive damages, and the jury instruction regarding pretext. We are unpersuaded and deny HSN's claims of error.

## FACTUAL BACKGROUND

2

HSN operates television channels devoted to selling products over the air. In 1985, HSN hired Cleveland as a show host to sell dolls. In 1997, Elena Panos became a supervisor of the show hosts. While giving her satisfactory performance reviews, Panos did not like Cleveland's hosting style, asking Cleveland to be less "homey" and more distinguished.

In 1998, Cleveland went on medical leave after she was diagnosed with myasthenia gravis, a neuromuscular disease. Cleveland eventually returned to HSN two months later on medical restriction. Her doctor cleared her for show hosting, but restricted her to a four-day work week, with limited overnight shows. Cleveland was cut from the broadcasting budget prepared in the fall of 1998 for 1999. In late 1998, Panos met with HSN's in-house counsel regarding terminating Cleveland. The in-house counsel advised against it, concerned about a possible ADA suit.

About the same time, Cleveland took another medical leave to have her thymus gland removed. When Cleveland had not contacted HSN many weeks after HSN's twenty-six week standard disability term elapsed, HSN informed her that she would be fired unless she provided medical documentation that she was covered under the ADA. She produced a letter from her doctor that cleared her to host shows under some medical restrictions. In August 1999, HSN assigned her to

3

an off-the-air support position. When she was not reinstated as a show host, Cleveland produced a letter from her doctor explicitly clearing her to host shows under the same four-day restrictions as before her second medical leave. Still, Cleveland was kept off the air in the support position.

A month after the doctor's letter clearing her, Cleveland was put back on the air, but mostly on HSN's less-esteemed sister network, "America's Store." Despite requests from vendors to have her back, HSN rarely put Cleveland back on the regular Home Shopping Channel.

Approximately eighteen months later, in April 2001, Cleveland was fired for doing an unauthorized infomercial on another station. Executive Vice President of Broadcasting Bill Concello made the decision.

At trial, Concello gave inconsistent reasons for the discharge: that Cleveland's contract forbid infomercials; that she had signed a "non-compete agreement"; that HSN had an "unwritten policy" prohibiting infomercials; then finally that it was "standard industry practice" that show hosts should not do infomercials. Cleveland produced evidence that these reasons were bogus: she was not under contract; the non-compete agreement was no longer valid; and no other employee had ever been made aware of an unwritten policy or industry practice prohibiting infomercials. Furthermore, she produced evidence of two other show

4

hosts who had been given permission to do infomercials.

## PROCEDURAL BACKGROUND

The jury found for Cleveland, awarding compensatory and punitive damages. HSN then moved for a renewed judgment as a matter of law and, in the alternative, a new trial. The district court granted HSN a judgment as a matter of law, finding that Cleveland had failed to rebut HSN's explanation that it had fired her because she had done an unauthorized infomercial. The district court found Cleveland had produced evidence that she was a popular and effective show host, that Panos wanted to fire her from the beginning, that she was treated differently when she returned from medical leave, and that Concello gave inconsistent reasons for her termination.

Nevertheless, the district court held that Cleveland had failed to show different treatment of a similarly situated show host; it found HSN had explained why it had given permission to do infomercials to the two other show hosts. It found no evidence of disability animus. The court wrote that Cleveland's disability actually delayed her termination, because Panos, after talking with in-house counsel, had put off firing Cleveland out of fear of an ADA lawsuit.

Most importantly, the court found Concello's inconsistent reasons for firing Cleveland immaterial. Whether based on a non-compete agreement, contract, or

5

unwritten policy, the court opined that the motivating factor was still Cleveland's unauthorized participation in the infomercial. While Cleveland produced compelling evidence that she had not violated any agreement or policy in doing the infomercial, this was immaterial to the district court; if HSN's true reason was still her participation in the infomercial rather than her disability, then Cleveland had not established pretext. Cleveland had produced no evidence that Concello did not honestly believe doing an infomercial was prohibited. At most, the court found, HSN was simply guilty of poor business judgment in firing an effective show host.

Cleveland appeals, claiming that the district court viewed the evidence in favor of HSN rather than her. HSN cross-appeals that, if this court should overturn the judgment as a matter of law, the district court erred in its denial of HSN's original motion for judgment as a matter of law at the close of Cleveland's evidence and in its denial of a new trial.

## STANDARD OF REVIEW

This court reviews *de novo* a district court's grant of a renewed judgment as a matter of law under Federal Rule of Civil Procedure 50, applying the same standard as the district court. *Thosteson v. United States*, 331 F.3d 1294, 1298 (11th Cir. 2003). Under Rule 50, a court should render judgment as a matter of law when there is no legally sufficient evidentiary basis for a reasonable jury to

6

find for that party on that issue. Fed. R. Civ. P. 50. We should review all of the evidence in the record and must draw all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 148-151 (2000). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 150. "[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 151.

In discrimination cases, the factors we should consider include the "strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Id.* at 149-50.

### ADA claim

Cleveland originally sought to prove discrimination under the *McDonnell Douglas* circumstantial evidence framework. *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this burden-shifting analysis, Cleveland had the initial burden of establishing a prima facie case of disability discrimination. *Wascura v. City of South Miami*, 257 F.3d 1238, 1242 (11th Cir.

7

2001). To establish a prima facie case of ADA discrimination, Cleveland had to show (1) a disability, (2) that she was otherwise qualified to perform the job, and (3) that she was discriminated against based upon the disability. *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1290 (11th Cir. 2002); *Gordon v. E.L. Hamm & Assoc., Inc.,* 100 F.3d 907, 910 (11th Cir. 1996). Once Cleveland put forth a prima facie case, which establishes a presumption of discrimination, the burden then shifted to HSN to articulate a legitimate, non-discriminatory reason for her termination. *Wascura*, 257 F.3d at 1242. HSN simply had the burden of production, and did not need to persuade the court that it was motivated by the reason. *Id*. After the articulated reason was given, the inferential presumption of discrimination was eliminated, the *McDonnell Douglas* framework disappeared, and Cleveland was left with the ultimate burden of proving that HSN intentionally discriminated against her because of her disability. *Reeves*, 530 U.S. at 142-43. In order to prove this intentional discrimination, Cleveland was allowed to show HSN's reason was "unworthy of credence" and a pretext for discrimination. *Id.*

## ANALYSIS

### Rebutting HSN's legitimate reason as pretext for discrimination

HSN's proffered reason for terminating Cleveland was that she participated in an unauthorized infomercial. The district court granted HSN a judgment as a

8

matter of law because Cleveland failed to rebut this reason with any evidence that it was pretext for her disability. The court opined that even though Concello, who made the termination decision, fumbled on the reason why infomercials were prohibited, Cleveland did nothing to rebut that his overall reason was still the infomercial rather than her disability. We reverse the district court's judgment as a matter of law because Cleveland produced sufficient evidence for the jury to find the infomercial excuse was pretextual.

Cleveland argues she rebutted the infomercial reason by calling into question Concello's credibility. She spends a great deal of her brief arguing that nothing prohibited her from doing an infomercial. Unfortunately for Cleveland, as the district court pointed out, that is not an issue. If she was in fact fired for doing the infomercial, under the ADA, the reason does not matter as long as it was not because of her disability. *See Silvera v. Orange County School Bd.*, 244 F.3d 1253, 1261 (11th Cir. 2001).

Nevertheless, we think the district court improperly viewed the evidence in the light most favorable to HSN (rather than Cleveland), and resolved the Concello credibility determination in HSN's favor. True, the shifting reasons given by Concello for why infomercials were prohibited does not change that she was fired for doing the infomercial. However, the shifting reasons allow the jury to question

his credibility. Once Concello's credibility is damaged, the jury could infer that he did not fire Cleveland because of the infomercial, but rather because of her disability.

**HSN's claim that Cleveland never proved a prima facie case**

HSN asserts that the legitimate non-discriminatory reason issue is irrelevant. It argues that the district court should have granted a judgment as a matter of law to HSN at the close of Cleveland's case because Cleveland failed to put forth a prima facie case by not producing evidence of HSN's treating a similarly situated person more favorably. However, whether Cleveland originally put forth a prima facie case is immaterial at this point.

The *McDonnell Douglas* prima facie case method was "'never intended to be rigid, mechanized, or ritualistic.'" *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715 (1983)(quoting *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577 (1978)). It is merely a procedural device to facilitate an orderly focused evaluation of the evidence "as it bears on the critical question of discrimination." *Id.* After a trial on the merits, an appeals court should not revisit whether the plaintiff established a prima facie case. Once HSN failed to persuade the district court to dismiss the action for lack of a prima facie case and responded to Cleveland's proof with a non-discriminatory reason, the *McDonnell Douglas*

10

analyses "drop[ped] from the case," and whether Cleveland really put forth a prima facie case "is no longer relevant." *Aikens*, 460 U.S. at 715. The only relevant question becomes whether Cleveland's termination was motivated by her disability. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 518-19 (1993).

**Sufficient evidence that Cleveland's disability motivated HSN's decision**

The ultimate question is whether there was a sufficient evidentiary basis for the jury to find that HSN's decision was motivated by Cleveland's disability. The evidence discrediting HSN's proffered reason for terminating Cleveland along with other evidence of discrimination provided a sufficient basis for the jury's verdict.

As stated, HSN allegedly terminated Cleveland for participating in an unauthorized infomercial. When pressed on the reason why infomercials were prohibited, Concello shifted from a contract, to a non-compete agreement, to an unwritten policy, to a standard industry practice. These inconsistent reasons allowed the jury to question his credibility. Once Concello's credibility was damaged, a rational jury could infer that he did not fire Cleveland because of the infomercial, but rather because of her disability.

Proof that HSN's "explanation is unworthy of credence" allows the jury to reasonably infer that HSN is "dissembling to cover up a discriminatory purpose." *Reeves*, 530 U.S. at 147. Dishonesty can be "affirmative evidence of guilt." *Id*.

11

Indeed, "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *Id.* Thus, the shifting reasons given by Concello allowed the jury to find HSN's explanation unworthy of credence, and consequently to infer the real reason was Cleveland's disability.

Beyond disbelieving HSN's explanation, additional evidence allowed the jury to infer disability discrimination. There was evidence of how HSN treated Cleveland differently after she came back to work with her disability. Upon her return, HSN relegated Cleveland to an off-the-air support position and left her off the budget for show hosts, even though her doctor cleared her for show hosting.

Moreover, there was evidence that HSN wanted to fire Cleveland well before the infomercial. Panos, a show host supervisor who worked with Concello, sought to fire Cleveland in 1998, but did not because HSN's in-house counsel warned that the act might be viewed as disability discrimination. HSN's Director of Planned Programing, Audrey Sarsfield, testified that Panos said HSN was trying to get rid of Cleveland and that "it would not be long." Most damaging, Sarsfield further testified that despite her request for Cleveland to go back to show hosting, HSN's Broadcasting Department, where Concello served as a vice president,

12

would not put Cleveland back on the air because of her medical condition.

This additional evidence that HSN treated Cleveland differently when she came back to work with a disability and that HSN had wanted to fire her before the infomercial, coupled with the jury's disbelief of HSN's unauthorized infomercial explanation, allows the jury to find that HSN wanted to fire Cleveland because of her disability all along, but was waiting for a pretextual reason (the infomercial) to fire her. The verdict had a sufficient evidentiary basis. Therefore, we reverse the judgment as a matter of law.

### HSN's motion for a new trial

Having reversed the district court's judgment as a matter of law, we are asked by HSN to review the district court's denial of its alternative motion for a new trial. Cleveland submits that HSN waived review of this motion because it failed to pursue a direct ruling on the alternative motion for a new trial when the district court granted the judgment as a matter of law. The district court's order begins by stating that the judgment as a matter of law and new trial motions were before the court. The order, after only analyzing the judgment as a matter of law motion, granted the judgment as a matter of law and ended by stating "[a]ny pending motions should be terminated and this file closed."

Federal Rule of Civil Procedure 50(c)(1) requires a court, if it grants a

13

judgment as a matter of law, to "also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial." Because HSN's arguments for granting a new trial are meritless, we assume without deciding that the order denied the motion for a new trial in conformance with Rule 50(c)(1). *Cf. Edwards v. Board of Regents*, 2 F.3d 382, 384 n.6 (11th Cir. 1993) (citing *Henderson v. DeRobertis,* 940 F.2d 1055, 1057 n.1 (7th Cir.1991) (opining that "where the motion for a new trial is not pressed on the trial court after the grant of [judgment as a matter of law], it is abandoned")).

HSN appeals the denial of a new trial based on the clear weight of the evidence, improper conduct by Cleveland's counsel, excessive damages, and improper jury instructions. We review the district court's denial of a motion for new trial for abuse of discretion. *Steger v. General Elec. Co.*, 318 F.3d 1066, 1081 (11th Cir. 2003).

Concerning the clear weight of the evidence, HSN essentially rehashes its arguments to uphold the judgment as a matter of law. These arguments are equally unpersuasive under the new trial motion. *Walls v. Button Gwinnett Bancorp, Inc.*, 1 F.3d 1198, 1201 (11th Cir. 1993).

Regarding counsel's conduct, HSN argues Cleveland's counsel referred to

facts not in evidence and mislabeled the issues of the trial. Many of HSN's cited examples were not improper. At times the district court sustained HSN's objection and gave a cautionary instruction. We find no abuse of discretion by the district court on this issue.

Concerning damages, Cleveland was awarded $100,000 in compensatory and $235,000 in punitive damages. HSN simply argues the damages were "excessive" and "unwarranted," without any cited authority. We find HSN's argument unpersuasive and waived for failure to provide any authority. *See Flanigan's Enterprises, Inc. v. Fulton County, Ga.*, 242 F.3d 976, 983 (11th Cir. 2001).

Regarding the jury instruction, HSN argues the district court erroneously explained pretext. We review a jury instruction deferentially. *SEC v. Yun*, 327 F.3d 1263, 1281 n.39 (11th Cir. 2003). However, we should grant a new trial if the instructions did not accurately reflect the law in such a way that we are "left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *Id*. (citations omitted). The jury instruction read:

> It is sufficient if Ms. Cleveland proves that the alleged disability was a determining factor that made a difference in the employer's decision. In this regard, you should consider whether Ms. Cleveland's disability more likely motivated HSN to terminate her or whether HSN's explanation is unworthy of belief. If you find HSN's reason's [sic] for discharging Ms. Cleveland are not worthy of belief, you may infer

15

that it acted for the reasons urged by Ms. Cleveland.

HSN complains that the burden-shifting pretext instruction improperly allowed the jury to find for Cleveland simply if it did not believe the infomercial excuse. HSN argues, according to *Reeves*, the charge should have clearly stated that it is not enough to disbelieve the employer; the factfinder must believe the employee's explanation. *See Reeves*, 530 U.S. at 146. HSN argues the jury should have been instructed that it may, *but need not*, infer discrimination from a disbelieved pretextual excuse.

In *Reeves*, the Supreme Court went on to find it "permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation" and that the dishonesty behind the proffered pretextual reason can be viewed as "affirmative evidence of guilt." *Id.* at 147. The instructions adhere to *Reeves*, by stating that the jury *may* infer rather than *must* or *should* infer. Adding *but need not* after *may* is unnecessarily duplicative. Given our deferential review, we are not left with a "substantial and ineradicable doubt" that the jury was misled by the instruction.

In sum, assuming the district court's order properly denied HSN's motion for a new trial, we find no abuse of discretion in its denial.

## CONCLUSION

16

We **REVERSE** the district court's grant of judgment as a matter of law to HSN because there was a sufficient evidentiary basis for the jury to conclude that Cleveland was terminated because of her disability rather than her participating in the infomercial.

REVERSED.