[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12164
Non-Argument Calendar

_____

D.C. Docket No. 2:10-cv-01149-AKK

STACY LANET WORD,

Plaintiff-Appellant,

versus

AT&T,

Defendant,

BELLSOUTH TELECOMMUNICATIONS, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(August 13, 2014)

Before TJOFLAT, JORDAN and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Stacy Word appeals the district court's grant of summary judgment[1] to Defendant-Appellee BellSouth Telecommunications ("BellSouth")[2] as to her complaint alleging: (1) retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and in violation of 42 U.S.C. § 1981; (2) discrimination on the basis of race and color, in violation of Title VII and § 1981; (3) interference and retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.; and (4) disability

---

[1] Plaintiff's Notice of Appeal identifies only the district court's March 29, 2013 order, which denied Plaintiff's Motion to Alter, Amend or Vacate Order granting summary judgment to Defendant. However, both parties on appeal address only the district court's grant of summary judgment to Defendant. Because the arguments contained in Plaintiff's Motion to Alter, Amend or Vacate Order were intertwined with the arguments Plaintiff made in opposition to summary judgment, and because Defendant does not argue that the omission of the summary judgment order from the Notice of Appeal caused it any prejudice—indeed, Defendant does not even mention Plaintiff's omission—we treat Plaintiff's Notice of Appeal as an appeal from the summary judgment order. See Wainwright v. Sec'y, Dep't of Corr., 537 F.3d 1282, 1284–85 (11th Cir. 2007) (concluding that this Court had appellate jurisdiction to review the district court's grant of summary judgment to the defendant, even though the plaintiff had designated in his notice of appeal only the district court's denial of his Rule 59(e) motion to alter or amend the judgment, because the plaintiff's arguments in his Rule 59(e) motion were intertwined with the arguments he made in opposition to summary judgment, the plaintiff had no reason to appeal only the denial of his Rule 59(e) motion, and the omission of the underlying judgment in his notice of appeal did not cause the defendant any prejudice).

[2] Word initially identified AT&T as her employer. However, because BellSouth later entered an appearance, answered, and has since been treated as the proper party in interest, only it will be referred to herein.

2

discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.[3]  After careful review, we affirm.

I.[4]

The record here shows that BellSouth used a four-step progressive discipline process in which employees advanced through the following levels: (1) informal discussion; (2) counseling; (3) warning; (4) suspension or letter in lieu of suspension; and (5) termination.  For employees, like Plaintiff, covered by BellSouth's collective bargaining agreement with the Communications Workers Association ("CWA"), Defendant removed counseling entries from an employee's file after six months, warnings after twenty-four months, and all remaining entries after thirty-six months if no intervening disciplinary action was taken.

As for attendance issues, Defendant's written policy was to deal with absenteeism problems on an individual employee basis with no fixed formula. Instead, those supervisors closest to the problem were expected to handle attendance issues by applying reasonable criteria and using discretion when taking disciplinary action.  It was also policy to consider an absence with no intervening work time as one "occurrence."  If an absence was broken by work time, the absences were considered separate "occurrences."  Company policy also instructed

---

[3]     Plaintiff-Appellant Stacy Word's motion to file a reply brief out of time is GRANTED.

[4]     As both parties on appeal have adopted the facts of the case as laid out by the district court, the facts recounted here are adapted in large part from the district court's opinion.

that the most useful measurement of absenteeism was a percentage—the days absent divided by the days scheduled.

Plaintiff worked as a BellSouth sales associate and progressed through each level of discipline due to attendance-related issues until she was issued a letter in lieu of suspension ("SL") on June 23, 2008. She filed a union grievance challenging the SL, and after a meeting between Plaintiff, a CWA representative, and Plaintiff's supervisor, her supervisor agreed on July 22, 2008, to remove the SL within six months if Plaintiff maintained satisfactory attendance during that time. Plaintiff then missed work on several occasions before her termination on December 9, 2008. Plaintiff filed a grievance alleging that her supervisor failed to timely advise her that she needed to submit a copy of a subpoena to excuse three of her absences, during which she appeared in family court with her son.

On June 22, 2009, at the third level of the grievance process, a CWA representative accepted Defendant's offer to change Plaintiff's termination into a thirty-day suspension entry in BellSouth's system, remove the SL from her personnel file, and change two of her previous absences for court appearances to "excused unpaid" absences. Plaintiff alleges that the CWA representative explained to her that the thirty-day suspension was "administrative" to allow her to retain her seniority and benefits, which Plaintiff claims she understood to mean that the suspension would not count against her going forward. She returned to

work on June 29, 2009, after having filed an Equal Employment Opportunity Commission ("EEOC") charge on June 4, 2009.

After returning to work, Plaintiff requested to use vacation time from August 3 to August 7 but did not submit a vacation request form because, she claims, she was told that she was not yet in the system to be able to request vacation. Plaintiff therefore called in each day of the entire week of August 3–7, 2009, to report that she would miss work for personal reasons because she was moving to a new apartment. After she called in the second day, an upper-level employee called the CWA representative to inform him that Plaintiff had called in the last two days and to request that he remind Plaintiff of the necessity of improving her attendance. Plaintiff returned to work on August 10 and was terminated on August 12, 2009. Plaintiff filed a grievance challenging the discharge, but the CWA declined to arbitrate the grievance. Plaintiff then filed the present suit on May 3, 2010.

On appeal, Plaintiff argues that the district court erred in granting summary judgment to Defendant on her retaliation and discrimination claims, her FMLA interference and retaliation claims, and her ADA claim. She argues that Defendant retaliated against her for filing an EEOC charge by terminating her after just one attendance-related "occurrence" once she was reinstated. She also argues that Defendant discriminated against her on the basis of her race and color, as evidenced by the fact that Caucasian and lighter-skinned African-Americans who

had been reinstated after termination were reinstated more quickly, were allowed to use vacation time after reinstatement, and were allowed more attendance-related "occurrences" before they were terminated a second time. Furthermore, she asserts that Defendant interfered with her ability to take FMLA leave by ordering her back to work before her FMLA leave expired and retaliated against her for taking FMLA days by counting those absences against her to support disciplinary action. Finally, Word maintains that her stress and anxiety prevented her from working and that Defendant violated the ADA by denying her a reasonable accommodation. We address each of her claims in turn, and we affirm the district court's grant of summary judgment to Defendant.

## II.

"We review de novo a district court's grant of summary judgment, viewing all the evidence, and drawing all reasonable inferences, in favor of the non-moving party." Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 767 (11th Cir. 2005). However, the court is not required to credit the non-movant's evidence if that evidence is so inherently implausible or blatantly contradictory that no reasonable juror could believe it. Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007). We will affirm the court's grant of summary judgment if no genuine issue of material fact exists. Id. A fact is material only if it could affect the outcome of the suit, and a dispute is genuine only if evidence exists that could cause a rational

jury to return a verdict in favor of the non-movant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  For factual issues to be considered genuine, they must have a basis in the record.  Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996).  Furthermore, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005).

III.

First, Plaintiff claims that Defendant retaliated against her for filing an EEOC charge on June 4, 2009, by terminating her on August 12, 2009.  Title VII makes it unlawful for an employer to discriminate against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  Section 1981 also encompasses retaliation claims, CBOCS West, Inc. v. Humphries, 553 U.S. 442, 451, 128 S. Ct. 1951, 1958 (2008), and the elements required to establish retaliation claims under § 1981 are the same as those required for retaliation claims under Title VII.  See Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008).  To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in statutorily protected conduct, (2) he suffered an adverse employment action, and (3) the adverse action was causally related to the protected conduct.  Id.

If the plaintiff establishes a prima facie case of retaliation, the employer has an opportunity to articulate a legitimate, nonretaliatory reason for the challenged employment action.  Id.  If the employer does so, the plaintiff must show by a preponderance of the evidence that the reason provided by the employer is pretext for prohibited retaliatory conduct.  Id.  A plaintiff may show pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [the employer's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence."  Springer v. Convergys Customer Mgmt. Grp., Inc., 509 F.3d 1344, 1348 (11th Cir. 2007).  "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.  Quarrelling with that reason is not sufficient."  Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1088 (11th Cir. 2004) (citation omitted).

Here, Defendant concedes for purposes of appeal that Plaintiff established a prima facie case of retaliation, and Defendant has provided a legitimate, nonretaliatory reason for discharging Plaintiff in August 2009—Plaintiff's five consecutive unexcused absences during the week of August 3–7, 2009, while at the suspension level of the company's progressive discipline process for prior attendance violations.  Therefore, the only issue remaining as to Plaintiff's Title

8

VII and § 1981 retaliation claims is whether Plaintiff met her burden of proving that Defendant's proffered reason for discharging Plaintiff was pretextual.

Plaintiff argues that she has demonstrated pretext by showing that Defendant (1) treated her thirty-day suspension, which replaced her December 2008 termination, as administrative and yet counted it against her in its decision to move to the next level of discipline—discharge—in August 2009, (2) advanced her to the next level of discipline after only one "occurrence" while allowing other allegedly similarly situated employees at least two "occurrences" before discharging them a second time, and (3) offered inconsistent reasons for denying her vacation time for the week of August 3–7, 2009, first allegedly telling her that she was not yet in the system to be able to request vacation and then contending that vacation time was not available that week due to other employees taking vacation.

Plaintiff's evidence did not meet Defendant's proffered reason "head on and rebut it," and she therefore failed to prove pretext. Id. Plaintiff's argument that Defendant told her that her suspension was administrative and would not count against her in the disciplinary process finds no support in the record, and her argument of pretext based on Defendant's allegedly changing the suspension from administrative to punitive in retaliation for her EEOC charge is likewise unsupported by the record. Even if Plaintiff was told that the suspension was administrative, she was told such by her CWA representative, not by Defendant,

9

and there is no evidence that any reference to the suspension indicated that it would not count against Plaintiff in the discipline process or that Plaintiff would be reinstated with a clean disciplinary slate; rather, Plaintiff's own deposition suggests that the suspension was administrative only, if at all, in the sense that it allowed Plaintiff to retain her seniority and benefits, which she would have lost if entered into the company's system as a new employee.

Moreover, Plaintiff did not establish that she was the only employee who was ever advanced to the next level of discipline after only one "occurrence," not to mention that Plaintiff's one "occurrence" in reality consisted of five consecutive unexcused absences from work.  Furthermore, BellSouth's Attendance and Punctuality Guidelines did not dictate the number of "occurrences" as the sole measuring stick for determining when discipline was appropriate; rather, the Guidelines placed the decision of when discipline for attendance-related infractions was fitting under the managerial discretion of supervisors.  Thus, challenging her termination based on the fact that she only incurred one "occurrence" merely quarrels with Defendant's business decision and does not show pretext.  Id.

Additionally, Plaintiff's inability to use vacation time for the week of August 3–7 does not show pretext because whether Defendant denied her vacation because she was not in the system or because vacation was not available, the denial, without more, does not show pretext.  Even if Plaintiff was told that she

could not take vacation until she was put into the system, Plaintiff also admitted that she never filled out the proper paperwork to request vacation, and no reasonable jury could find based on the evidence presented by Plaintiff that Defendant retaliated against her by obstructing her use of vacation time.  Thus, Plaintiff did not demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions" in Defendant's proffered nonretaliatory reason for terminating her such that a reasonable factfinder could find that the proffered reason was pretextual.  Springer, 509 F.3d at 1348.  Defendant was therefore entitled to summary judgment on Plaintiff's retaliation claims.

IV.

Second, Plaintiff claims that Defendant discriminated against her on the basis of her race and skin color in violation of Title VII and § 1981.  Title VII makes it unlawful for employers to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color."  42 U.S.C. § 2000e-2(a)(1).  Title VII and § 1981 have the same requirements of proof and use the same analytical framework, so it is appropriate to "explicitly address [a] Title VII claim with the understanding that the analysis applies to the § 1981 claim as well."  Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

Discrimination claims based on circumstantial evidence are evaluated under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). Burke-Fowler v. Orange Cnty., 447 F.3d 1319, 1323 (11th Cir. 2006). To establish a prima facie case of discrimination under that framework, a plaintiff may show that (1) she is a member of a protected class, (2) she was subjected to an adverse employment action, (3) her employer treated similarly situated employees outside of her protected class more favorably, and (4) she was qualified to do the job. Id. If the plaintiff establishes a prima facie case, the defendant must show a legitimate, non-discriminatory reason for its employment action. Id. If it does so, the plaintiff must prove that the reason proffered by the defendant is pretext for unlawful discrimination. Id.

To compare Plaintiff's treatment with that of other employees outside of her protected class, Plaintiff must show that she and her comparators "are similarly situated in all relevant respects." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). In the disciplinary context, we consider whether the employees were accused of the same or similar conduct and were disciplined in different ways. Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999).

No reasonable jury could find that Plaintiff's comparators, two Caucasians and two lighter-skinned African-Americans who were also reinstated after termination and subsequently discharged a second time, were similarly situated to

her in all relevant respects regarding their conduct.  Plaintiff was terminated after missing five consecutive days of work totaling approximately forty hours, while three of her proffered comparators were terminated after multiple short absences and tardies totaling less than three hours of missed work each.[5]  Under Defendant's policy of measuring absenteeism by dividing days absent by days scheduled, Plaintiff's absenteeism rate was significantly higher than that of her comparators.  Therefore, even though Defendant's attendance-reporting system counted Plaintiff's five-day absence as one "occurrence" and her comparators' tardies and short absences as multiple "occurrences," the quality and quantity of her comparators' attendance infractions were not similar to the quality and quantity of Plaintiff's absences.  Id.  Thus, Plaintiff cannot show that her proffered comparators were similarly situated to her for the purpose of establishing a prima facie case of race or color discrimination.  See Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1318 (11th Cir. 2003) ("In light of the entire record, [Plaintiff] and [her comparator] are not similarly situated.  [Plaintiff]'s documented performance and tardiness problems were much worse than [her comparator]'s in both number and nature.").

Plaintiff also argues that her comparators were treated more favorably in the reinstatement process in that they were reinstated more quickly and were allowed

---

[5]    As to the fourth comparator, no evidence in the record showed how many absences he had before he was terminated a second time.

to take vacation after reinstatement.  However, the circumstances surrounding their reinstatement differed significantly.  For instance, one of the comparators was reinstated after Defendant realized that an administrative error in his record had caused him to be advanced one level too many in the disciplinary process, and another comparator was reinstated after Defendant learned that the absence resulting in his termination was prompted by the sudden death of his significant other.  As to vacation, Plaintiff's comparator had worked for five months after reinstatement before taking vacation, which provided him ample opportunity to request vacation time and have his request approved, whereas Plaintiff only worked for five weeks after her reinstatement before she was terminated again, during which time she never filed a formal request for vacation.  Because Plaintiff was not similarly situated to her comparators in all relevant respects, no reasonable jury could find that the differences surrounding their reinstatements or vacation time showed discrimination.  Thus, Plaintiff failed to establish a prima facie case of race or color discrimination, and summary judgment was appropriate.  See Holifield, 115 F.3d at 1562 ("If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present.").

Moreover, even if Plaintiff were able to establish that similarly situated employees outside of her protected class were treated more favorably by

14

Defendant, no genuine issue of material fact exists as to whether Defendant's proffered legitimate, nondiscriminatory reason for terminating Plaintiff was pretextual for the same reasons explained in Part III, supra.  In addition, Plaintiff's arguments that Defendant counted FMLA absences as unexcused and counted absences due to court appearances against her fail to meet Defendant's reason head on and rebut it, as Plaintiff admitted in her deposition that she had several absences in addition to any FMLA and court-related absences that justified Defendant advancing her through the disciplinary process.[6]  Thus, Defendant was entitled to summary judgment on Plaintiff's discrimination claims, as well.

## V.

Third, Plaintiff claims that Defendant violated the FMLA by interfering with her FMLA leave and by retaliating against her for taking such leave.  The FMLA provides that eligible employees are entitled to "12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position."  29 U.S.C. § 2612(a)(1)(D).  The FMLA creates two types of claims to preserve and enforce the rights it creates: "interference claims, in which an employee asserts that his

_____

[6]    "We do not sit as a 'super-personnel department,' and it is not our role to second-guess the wisdom of an employer's business decisions—indeed the wisdom of them is irrelevant—as long as those decisions were not made with a discriminatory motive." Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1266 (11th Cir. 2010); see also Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir.1984) ("[An] employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.").

15

employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." Strickland v. Water Works & Sewer Bd. of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001) (citations omitted).  Plaintiff claims that Defendant interfered with her FMLA leave by forcing her to return to work prior to the expiration of her leave and that Defendant retaliated against her for taking FMLA leave by counting FMLA absences against her when implementing discipline.

An FMLA interference claim requires a plaintiff to show by a preponderance of the evidence that she was entitled to a benefit denied by the defendant.  Id. at 1206–07.  An employer may be held liable for interfering with FMLA rights even if it did not intend to deny the benefit.  Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1235 (11th Cir. 2010).  The only evidence supporting Plaintiff's contention that Defendant interfered with her FMLA leave by requesting that she return to work before the expiration of her leave is Plaintiff's own uncorroborated affidavit, which references two exhibits that Plaintiff failed to submit.  Because "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion," Plaintiff's affidavit, standing alone, was not enough to survive Defendant's motion for summary judgment.  Ellis, 432 F.3d at 1326; see also Brooks v. Cnty. Comm'n of Jefferson Cnty., 446 F.3d 1160, 1161 (11th Cir.

16

2006) ("A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.").

To succeed on an FMLA retaliation claim, an employee must demonstrate that her employer intentionally discriminated against her in the form of an adverse employment action for having exercised an FMLA right. Strickland, 239 F.3d at 1207. In the absence of direct evidence, we apply the McDonnell Douglas burden-shifting framework. Id. To establish a prima facie case of retaliation under the FMLA, a plaintiff must show that (1) she engaged in statutorily protected conduct, (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected conduct and the adverse employment action. Id. After the plaintiff establishes a prima facie case, the employer must provide a legitimate, nondiscriminatory reason for the adverse action. Schaaf v. Smithkline Beecham Corp., 602 F.3d 1236, 1243 (11th Cir. 2010). If the employer does so, then the plaintiff has the burden of proving that the reason was merely pretext for retaliation. Id. at 1244.

No genuine issue of material fact exists here as to whether Defendant retaliated against Plaintiff for taking FMLA leave. Plaintiff claims that Defendant retaliated against her for taking FMLA leave by issuing an SL when she returned to work from FMLA leave on January 11, 2008. However, Plaintiff testified in her

17

deposition that she did not receive an SL in January 2008, and Defendant introduced evidence that the letter in the record dated January 2008 was the product of a clerical error and was misdated—it was actually the SL issued to Plaintiff on June 8, 2008, but Plaintiff's supervisor failed to change the date on the template she used to craft the June 2008 SL. Additionally, if Plaintiff had been issued such a letter in January 2008, she most likely would not have received another one in June 2008, as she would have been past that disciplinary step, but rather would have been advanced to termination. The letter dated January 11, 2008, in the record was, at most, a "mere 'scintilla' of evidence" supporting an FMLA retaliation claim; it was therefore insufficient, standing alone, to survive a motion for summary judgment. Brooks, 446 F.3d at 1162.

Furthermore, no reasonable jury could find that Plaintiff's December 2008 termination was retaliatory, as Plaintiff admitted in her affidavit that she was assured during her grievance hearing that her November 2008 FMLA days were not a factor in that termination. The termination brief in Plaintiff's file corroborated that testimony in that it showed that her termination was based on "occurrences" not including any FMLA absences. Similarly, no genuine issue of material fact exists as to whether the SL issued to Plaintiff in June 2008 was retaliatory, as no FMLA days were counted toward that disciplinary action.

Therefore, Plaintiff failed to establish a prima facie case of FMLA retaliation, and summary judgment was appropriate on both of Plaintiff's claims under the FMLA.

VI.

Fourth, Plaintiff claims that Defendant violated the ADA by not providing a reasonable accommodation for her disability. The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). When an ADA discrimination claim is based on circumstantial evidence, we apply the McDonnell Douglas burden-shifting framework, which requires a plaintiff to establish a prima facie case by showing that (1) she has a disability, (2) she was otherwise qualified to perform the job, and (3) she was discriminated against based upon the disability. Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1193 (11th Cir. 2004). Once the plaintiff establishes a prima facie case, the employer must articulate a legitimate, non-discriminatory reason for terminating the plaintiff. Id. If the employer does so, the plaintiff is then left with the ultimate burden of proving that the employer intentionally discriminated against her and that the proffered reason for the termination was pretext for discrimination. Id.

19

The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "Major life activities" include working. Id. § 12102(2)(A). No genuine issue of material fact exists as to whether Plaintiff had a disability that substantially limited her ability to work. Both Plaintiff and her supervisor testified that Plaintiff did not have job-performance issues; rather, she only had attendance-related problems. Plaintiff also never requested accommodation for a disability through the company's formal accommodation process, and there is no record of any impairment limiting her job performance.

Moreover, no reasonable jury could find that Plaintiff was regarded as having a disability. Plaintiff argues that she was regarded as disabled by Defendant because an upper-level employee agreed to help transfer Plaintiff from her supervisor's team after Plaintiff complained that the supervisor was tough on her and caused her stress and anxiety. Plaintiff claims that she requested the transfer as an accommodation for her disability. However, there is no evidence indicating that the employee agreed to help move Plaintiff as an accommodation for a disability as opposed to a simple resolution of a personality conflict. In addition, any stress and anxiety Plaintiff suffered only interfered with her ability to work with that supervisor, not with her ability to perform her job. Thus, because

20

Plaintiff failed to show that she has a disability, she failed to establish a prima facie case of discrimination under the ADA, and Defendant was entitled to summary judgment on Plaintiff's ADA claims, as well.

In sum, Plaintiff did not show a genuine issue of material fact as to any of her claims, and summary judgment was proper. Accordingly, the order of the district court granting summary judgment to Defendant is

AFFIRMED.