[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12154
Non-Argument Calendar

_____

D.C. Docket No. 2:17-cv-00903-MHH

MARGARET HENDERSON,

Plaintiff-Appellant,

versus

LABORATORY CORPORATION OF AMERICA HOLDINGS,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(April 14, 2021)

Before MARTIN, NEWSOM, and BRANCH, Circuit Judges.

PER CURIAM:

After working for Laboratory Corporation of America ("LabCorp") for 42 years, Margaret Henderson was terminated on April 13, 2016, at the age of 65. Henderson sued LabCorp for age discrimination under the Age Discrimination in Employment Act ("ADEA"), claiming LabCorp fired her because of her age. LabCorp denied the allegation and asserted that it terminated Henderson because of her poor performance over multiple years in violation of its policies. Upon LabCorp's motion, the district court granted LabCorp summary judgment because it found that Henderson failed to identify evidence from which reasonable jurors could find that LabCorp terminated Henderson because of her age. For the reasons explained below, we affirm.

## I. Background

LabCorp operates clinical laboratories throughout the country. In 1973, Henderson began working as a laboratory technician in LabCorp's Birmingham office. By 2011, Henderson oversaw four departments in LabCorp's Birmingham office. As part of a 2011 restructuring led by Rudy Menendez, Vice President of Laboratory Organizations, Henderson's responsibilities were reduced to overseeing only two departments. The next year, Henderson's responsibilities were reduced again, leaving her with oversight of only the Birmingham microbiology department.

2

As head of the microbiology department, Henderson was responsible for managing the department's laboratory supervisors and their team leaders to ensure that specimens were processed efficiently.  Menendez, as leader of the restructuring, focused particularly on performance metrics to assess the staffing and productivity of LabCorp departments.  In the three years leading to Henderson's termination, the Birmingham microbiology department, under Henderson's leadership, repeatedly fell short of these metrics.

In 2014, after the microbiology department struggled to meet required metrics, Henderson ascribed its failures (particularly the high use of overtime hours) to inadequate staffing.  In November 2014, Henderson received a performance improvement plan from her supervisor, Lynn Metcalf, that suggested ways to improve her management of the department.[1]  The plan specifically focused on the department's use of overtime and explained that management expected "[m]icro[biology] resources [be] managed" to maintain certain low levels of overtime use while keeping up productivity targets.  The plan stated that "[e]xcessive [overtime] is due to [mismanagement] of resources," and warned Henderson that she "must have personnel available when the work is available"

---

[1]  Metcalf was the Birmingham lab's general manager and reported to Menendez in Tampa until November 30, 2015.

and "monitoring workflow and adjusting to workflow changes is one of the key elements to controlling [overtime]."

Beginning in 2015, LabCorp's Birmingham laboratories began receiving twice daily automated reports called "AUDI reports" showing the number of overdue specimens in each department. High AUDI ratings were troublesome because they indicated delayed test results which could cause delayed diagnoses or spoiled specimens. Menendez expected each department to generally keep its AUDI rating below 200.

In June 2015, Metcalf gave Henderson a mostly positive performance evaluation. Henderson scored 88 out of 100 which "[met] [e]xpectations." Metcalf wrote that Henderson was "excellent at anticipating the needs of her department and planning ahead to meet those needs." But later in 2015 things worsened for Henderson. Leaders from the Tampa LabCorp microbiology department were sent to the Birmingham microbiology department to coach the lab in improving efficiency and quality control to keep low AUDI numbers. The leader of the Tampa microbiology department, Ethel Pujols, visited Birmingham several times to coach and counsel Henderson's department. On October 5, 2015, Pujols emailed Henderson that "[t]he AUDI is still long" and "should be less than 100." Henderson disliked these visits and emailed Metcalf saying "Ethel Pujols has been here at least 3 or 4 times in the past year and Dr. Harvey [was] here last

4

August.  I feel like I am constantly being harassed and I feel like my job is in

constant jeopardy."

On October 22, 2015, days before Henderson turned 65, Metcalf gave

Henderson a verbal warning concerning quality control, efficiency, and accident

issues in the department.  The written record of the warning said in part:

> In October 2015 the Microbiology department reported out 28 lab
> accidents.  It is your responsibility to ensure that specimen problems
> are being worked on a timely basis. . . . These 28 specimens will need
> to be recollected which creates late reporting and inconveniences our
> patients and in fact some specimens may not be able to be recollected
> . . . . We have discussed this in the past; however the problems still
> persists [sic].  Lack of compliance with LabCorp procedures or
> violations of any other policy may result in further disciplinary action
> up to and including termination of employment.

Just over a month after Metcalf issued Henderson the verbal warning, on

November 30, 2015, Pujols became Henderson's supervisor.  Joy Davidson, a

laboratory supervisor under Henderson, testified that Pujols was "disrespectful" to

Henderson, but she did not think it had anything to do with Henderson's age.

Davidson testified that Pujols singled out Henderson and often yelled profanity

towards her.  Henderson testified that Pujols referred to her as a "real southern

lady" and as Pujols' "mentor."  Pujols also told Henderson that she "hope[d] to be

like [Henderson] when [she got] to be [her] age."  Henderson also testified that

Pujols referred to Menendez as "daddy," and would say "daddy's not happy with

you today."

5

In December of 2015, Pujols was concerned about satisfying Menendez's requirements for the Birmingham microbiology lab. After Henderson complained about staffing deficiencies, Pujols responded in a December 1, 2015 email that "[n]ow is not the time to argue that your style is better because [Birmingham] is not meeting the basic metrics. Once we meet all the metrics we can go back to re-evaluate." Two days later, Menendez emailed Pujols that an October 2015 turn-around-time report was "[n]ot a good report for Birmingham." Pujols then told Henderson to "come [up] with a solid mathematical plan" to improve numbers for the next turn-around-time report. Three days later, on December 7, 2015, Pujols emailed Henderson asking: "what is the plan for the AUDI?" Pujols instructed "[d]o not wait until I ask you. You need to come up with a plan every day. It is your job to control your metrics."

On January 7, 2016, Pujols issued Henderson a written reprimand explaining her responsibilities. The reprimand stated that Henderson's department had performed quality control "irregularly or not at all in some areas during 2015." The written reprimand stated that "[w]e have discussed this in the past; however the problem persists," and it warned that a lack of compliance with LabCorp policies might result in Henderson's termination. Supervisors in the microbiology department also received warnings, and one of the supervisors, Davidson, stepped down from her supervisor role and returned to her former role as a technician

following the January 2016 warning.  When discussing replacing Davidson, Pujols emailed Henderson that "Margaret[,] we can do this, we just have different management styles and I am trying to discover who are my warriors.  I want active innovative people that are creative under pressure."  Henderson testified that Pujols said she wanted to fill the position with "someone that was a young Margaret."

The next month, AUDI numbers in the microbiology department rose again to over 300.  Pujols emailed Henderson asking her to "clean up" that day's AUDI report.  She also told Henderson to "come up with a plan that controls your AUDI even if you have to bench yourself . . . . The expectations for us is to control the AUDI no matter what."  Pujols told a human resources manager who asked about why the numbers were so high that she "would like to tell [Henderson] that she will lose her employment with LabCorp if the AUDI spikes again."  Instead, Pujols emailed Henderson and requested an explanation for that day's AUDI exceeding 300 after being under control for months and said, "we are reverting to incorrect behavior."

On March 7, 2016, Menendez emailed Pujols and others seeking an explanation for the AUDI numbers in the Birmingham microbiology department because they were "so bad" again.  Pujols again sought an explanation from Henderson, asking her to "[p]ut a plan into place now where you control the

AUDI. Do not let it go to 300." Henderson attributed the high numbers to staffing issues, specifically the need for weekend personnel.

On April 11, 2016, the AUDI report was above 600. The high report was due to a mistake made by a contract employee over the weekend while Henderson was out of the office. The next day, Pujols recommended Henderson be terminated from her position. The recommendation Pujols prepared recounted Henderson's previous disciplinary events, warnings, and conversations between Pujols and Henderson about high AUDI reports. The recommendation said Henderson "has been unable to meet the AUDI requirements for the department." LabCorp's human resources director and Menendez approved the termination. Henderson was officially terminated two days later.

After Henderson's termination, Pujols, age 48, temporarily assumed the responsibilities of Henderson's position while continuing to manage the Tampa microbiology department. AUDI numbers remained high under Pujols's interim management, and Menendez expressed concern about the high numbers. On May 9, 2016, Henderson's position was posted for applicants, and in August 2016, LabCorp hired Jennifer Clement, age 61, to replace Henderson permanently. Metcalf testified that the AUDI numbers did not improve under Clement, and Clement was reprimanded for poor AUDI reports. Clement left LabCorp voluntarily in early 2018.

When Henderson filed for unemployment, LabCorp told the Alabama Department of Labor that Henderson was terminated for "[u]nsatisfactory work performance." It elaborated that the "final incident" leading to Henderson's termination was the 600+ spike on the April 11, 2016 AUDI report. LabCorp also stated that Henderson "did not staff her department to meet the needs of the testing schedule" and her employment was terminated involuntarily due to "[m]isconduct related performance."

On June 24, 2016, Henderson filed a formal charge of age and gender discrimination with the EEOC. Thereafter, Henderson filed the instant lawsuit alleging only age discrimination under the ADEA. The district court granted LabCorp's motion for summary judgment on Henderson's employment discrimination claim, and Henderson appealed.

## II.    Standard of Review

"We review *de novo* a district court's grant of summary judgment, applying the same legal standards as the district court." *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1263 (11th Cir. 2010). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant has met this burden, we view the evidence in the light most favorable to the non-movant. *Alvarez*, 610 F.3d at 1263–64.

### III.    Discussion

On appeal, Henderson argues that the district court erred in granting LabCorp's motion for summary judgment for two reasons.  First, she argues that LabCorp's articulated reason for her termination—poor performance over multiple years in violation of company guidelines—was pretext for age discrimination.  Second, she argues that, regardless, she presented a convincing mosaic of circumstantial evidence that creates a triable issue as to LabCorp's discriminatory intent.

Under the ADEA, it is unlawful for an employer to "discharge any individual . . . because of such individual's age."  29 U.S.C. § 623(a)(1).  A plaintiff alleging discrimination under the ADEA must prove that age discrimination was the "but-for" cause of the adverse employment action—meaning that her age had a determinative influence on the outcome.  *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013).  A plaintiff can establish age discrimination using either direct or circumstantial evidence.  *Id.*  When relying on circumstantial evidence, the plaintiff can establish age discrimination in two ways.  *Id.*  First, the plaintiff can operate under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Id.*  Second, the plaintiff can present circumstantial evidence that "creates a triable issue concerning

10

the employer's discriminatory intent."[2]  *Id.* at 1333 (quoting *Smith v. Lockheed Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)).

## A.    *McDonnell Douglas* **Framework**

In the ADEA context, under the *McDonnell Douglas* burden shifting framework, a plaintiff must first establish a *prima facie* case of discrimination. *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*). Among other methods, a plaintiff can establish a *prima facie* ADEA violation "by showing that [s]he (1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced by . . . a younger individual."  *Id.*

If the plaintiff establishes a *prima facie* case of discrimination, the burden of production then shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *Id.*  If the defendant employer articulates such a reason, the plaintiff must come forward with evidence sufficient to permit a reasonable factfinder to conclude that the defendant employer's articulated reason was not the real reason for the adverse employment

---

[2]  Litigants and courts often refer to this second pathway as the "convincing mosaic" test. We explained in *Sims* that "[a] triable issue of fact exists 'if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'"  704 F.3d at 1333 (quoting *Smith*, 644 F.3d at 1328).

We note that the "convincing mosaic" is not a legal test but is a metaphor for the proposition that a discrimination plaintiff can prove her case by presenting evidence that creates a genuine issue of material fact as to the employer's discriminatory intent.

action.  *Id.*  An employee must meet an employer's proffered reason "head on and rebut it, and . . . cannot succeed by simply quarreling with the wisdom of that reason."  *Id.* at 1030.  When the plaintiff fails to produce evidence creating a genuine issue of material fact as to whether the employer's articulated reason is pretextual, the employer is entitled to summary judgment.  *Id.* at 1024–25.

The district court assumed that Henderson established a prima facie case of age discrimination and found that LabCorp articulated a legitimate, non-discriminatory reason for its employment decision—Henderson was terminated for her poor performance over multiple years in violation of LabCorp's guidelines.  The district court then determined that Henderson did not demonstrate that Labcorp's articulated reason for her termination was pretext for age discrimination.  We agree with the district court that Henderson did not demonstrate that a reasonable jury could conclude that LabCorp's reason for terminating Henderson was pretext for age discrimination.

Henderson points to LabCorp's treatment of her replacements as head of the Birmingham microbiology department, Pujols and Clement, both of whom are younger than Henderson, as evidence of pretext.  She asserts that because LabCorp did not fire Pujols or Clement, even though AUDI numbers remained high under their leadership, a reasonable jury could infer that LabCorp's reasons for firing her were pretextual.  We agree with the district court that this evidence is insufficient

to demonstrate pretext because LabCorp's treatment of Pujols and Clement is not probative of Henderson's age discrimination claim for two reasons. First, Pujols and Clement each only served in the position for a short tenure and left the position when AUDI numbers did not improve. Second, Henderson did not demonstrate that either Pujols or Clement had the disciplinary track record that she possessed in her final year-and-a-half as head of the microbiology department, which encompassed other deficiencies in addition to a failure to meet AUDI guidelines. Accordingly, Henderson did not meet her burden under the *McDonnell Douglas* framework to rebut LabCorp's proffered reason as pretext for age discrimination.

## B.     Convincing Mosaic

Notwithstanding a plaintiff's failure to establish age discrimination under *McDonnell Douglas*, she may survive summary judgment if she presents circumstantial evidence that creates a triable issue about the employer's discriminatory intent. *Sims*, 704 F.3d at 1333 (citing *Smith*, 644 F.3d at 1328). "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (quotation marks omitted). A plaintiff may make such a showing "by evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might

13

be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quotation marks omitted).

In arguing she demonstrated a triable issue on LabCorp's discriminatory intent, Henderson contends that: (1) the timing of her termination was suspicious because she received a verbal warning the same month she turned 65 years old; (2) Menendez and Pujols made "ageist statements" and treated her in a disrespectful manner; (3) LabCorp gave "shifting reasons" for her termination; and (4) LabCorp set her up to fail by setting unreasonable expectations.[3] The district court determined that the evidence Henderson relied on did not create a triable issue as to LabCorp's discriminatory intent. We agree.

Henderson's first argument, that the timing of her October 2015 warning coinciding with her 65th birthday supports a finding that LabCorp had a discriminatory intent in firing her, is insufficient for several reasons. First, this warning was issued by Metcalf, who Henderson does not allege had any discriminatory motivation towards her. Second, Henderson received other disciplinary actions before this verbal warning that did not coincide with her 65th

---

[3] Henderson also asserts that LabCorp's treatment of Pujols and Clement when they replaced her is evidence of LabCorp's discriminatory intent. As explained above, LabCorp's treatment of Pujols and Clement is not probative of LabCorp's discriminatory intent because they are not similarly situated to Henderson.

birthday.  For example, in November 2014, LabCorp placed Henderson on a performance improvement plan for mismanaging department resources.  Third, it is undisputed that the verbal warning was issued after 28 accidents were reported in Henderson's department.  The fact that Henderson turned 65 in October 2015, amid ups and downs in LabCorp's evaluation of her performance, is insufficient to create a triable issue of fact as to LabCorp's discriminatory intent.

Henderson's second argument, that Menendez and Pujols treated her disrespectfully because of her age, also falls short.  Davidson testified that Menendez treated Henderson differently than other managers and was disrespectful to her.  But Davidson also testified that she did not know why Menendez treated Henderson disrespectfully, and Henderson put forth no evidence that Menendez's disrespectful treatment was because of her age.  Henderson also relies on Davidson's testimony that Pujols singled her out for disrespectful treatment.  Specifically, Pujols used profanity frequently and yelled at Henderson.  But once again, Davidson testified that she did not think Pujols's treatment of Henderson had anything to do with her age.

Henderson also points to several statements Pujols made to support her discrimination claim.  Specifically, Pujols told Henderson in reference to hiring a new employee that that she wanted employees who were "warriors" and "active innovative people that are creative under pressure."  Henderson also testified that

15

Pujols said she considered Henderson to be a "southern lady" and her "mentor." These descriptors are not age-specific statements, and they do not support Henderson's argument that she was fired because of her age.[4]

Henderson points to two arguably age-related statements Pujols made, but these comments were isolated, not disparaging of age, and not connected to her termination or any disciplinary action. In reference to filling an open position, Pujols told Henderson she was looking for a "young Margaret." She also told Henderson "I just hope to be like you when I get to be your age." These statements, in context, do not create a triable issue that LabCorp fired Henderson because of her age. *Rojas v. Florida*, 285 F.3d 1339, 1343 (11th Cir. 2002) (holding that a discriminatory comment that was isolated and unrelated to the termination decision was insufficient to establish a material fact as to the employer's discriminatory intent).

Henderson next argues that LabCorp's discriminatory intent is shown by its "shifting reasons" for her termination. Henderson argues that LabCorp's recital of her non-AUDI performance failures (i.e., inefficient staffing and failure to conduct quality control) in this case constituted a shifting and inconsistent explanation for

---

[4] Similarly, Henderson's suggestion that we can infer that Menendez or Pujols discriminated against her because of her age because Pujols nicknamed Menendez "Daddy" does not hold weight. While this nickname may be strange, it does not support the inference that Menendez or Pujols treated Henderson differently because of her age.

16

her termination because Pujols only cited her high AUDI numbers at her termination meeting.  Henderson's argument fails because the reasons LabCorp mentions are not inconsistent with one another.  Henderson's termination memo mentions Henderson's AUDI failures and her October 2015 warning concerning staffing and quality control problems.  An employer's shifting reasons for an adverse employment action may allow a factfinder to reasonably infer that the employer is dissembling to hide a discriminatory purpose, but this is not so when an employer gives additional but consistent reasons for an employee's termination. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1194–95 (11th Cir. 2004); *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1428 (11th Cir. 1998).

Henderson's final argument is that LabCorp set unreasonable and arbitrary AUDI goals as part of a plan to set her up to fail and terminate her.  Henderson's argument falls short for several reasons.  First, every department at the Birmingham laboratory was expected to meet certain AUDI standards while understaffed, not just Henderson's department.  Second, the AUDI metrics affected multiple LabCorp employees and were not specifically targeted at Henderson.  Multiple managers, including Davidson, left LabCorp or took a lower position because of the pressure from Menendez to improve efficiency based on the AUDI numbers.  Third, the AUDI numbers were not "arbitrary" because it is undisputed that Henderson knew that all Birmingham departments were expected to keep the

17

AUDI below 200.  Fourth, Henderson's suggestion that the final AUDI spike to over 600 before her termination was not her fault is not persuasive.  Even though Henderson was on approved leave at the time of the incident, Henderson was responsible for hiring and staffing the contract employee whose mistake caused the AUDI to spike to over 600.  While Henderson may not agree with LabCorp's use or enforcement of the AUDI metric, we do not consider the reasonableness of LabCorp's business judgment in this appeal.  *Chapman*, 229 F.3d at 1030.  Rather, our only consideration is whether LabCorp terminated Henderson because of her age.  *Id.*

Because Henderson did not present circumstantial evidence sufficient to create a triable issue of fact as to LabCorp's discriminatory intent, we affirm the district court's grant of summary judgment to LabCorp.

**AFFIRMED.**

18