[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-14201
Non-Argument Calendar
_____

D.C. Docket No. 2:19-cv-00263-RDP


JAYME DAVIDSON,

Plaintiff-Appellant,

versus

CHSPSC LLC,
d.b.a. Grandview Medical Center,

Defendant,

AFFINITY HOSPITAL LLC,
d.b.a. Grandview Medical Center,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(June 22, 2021)

Before JORDAN, GRANT, and BLACK, Circuit Judges.

PER CURIAM:

Jayme Davidson appeals the district court's grant of summary judgment in favor of her former employer, Affinity Hospital LLC, d/b/a/ Grandview Medical Center (Grandview), on her claims for discrimination and retaliation under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, as amended by the ADA Amendments Act of 2008, and for retaliation under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2615.

Grandview, which operates an acute care hospital in Birmingham, Alabama, terminated Davidson from her employment as a social worker on October 30, 2017, following a series of disciplinary actions. Davidson, who has partial hearing loss and had suffered from a C. difficile (C. diff) infection and ankle injury, filed suit in federal court, alleging her discipline and termination were the result of disability-based discrimination and retaliation for her requests for workplace accommodations and use of FMLA leave. In granting summary judgment in favor of Grandview, the court determined Davidson had established a prima facie case of FMLA retaliation based on two disciplinary actions, but she failed to demonstrate Grandview's reasons for the discipline or termination were pretextual. The court also determined Davidson had established a prima facie case of ADA

2

discrimination and retaliation based on her termination, but it again found she failed to show Grandview's reasons for her termination were pretextual.

On appeal, Davidson argues she established a genuine issue of material fact as to pretext with respect to both her ADA and FMLA claims. She also argues she established a prima facie case of FMLA retaliation based on an additional disciplinary action and her termination. After review,[1] we affirm.

## I. BACKGROUND

The facts of this case are set forth accurately and in detail in the district court's opinion. We provide the following background to the extent it is of particular relevance to our analysis.

### A. Davidson's Role

Davidson began working as a social worker for Grandview's predecessor in 1997, and in 2007, Grandview promoted her to lead social worker. During the relevant time period of 2015 to 2017, Davidson's primary responsibilities were case management and discharge planning for patients on the hospital's cardiology

---

[1] We review a district court's grant of summary judgment de novo, "construing all facts and drawing all reasonable inferences in favor of the nonmoving party." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 919 (11th Cir. 2018) (quotation marks omitted). Summary judgment is appropriate when the record evidence shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

floor.  Davidson reported to Cindy Watson during this timeframe, until Watson left Grandview in August of 2017 and was replaced by Kim Colvert.

## B.  Hearing Loss and FMLA Leave for C. diff Infection

In 2015, Davidson had 35% hearing loss in both ears and asked Grandview to purchase hearing aids for her.  Grandview denied her request and subsequent appeal.  In early 2017, Davidson purchased hearing aids for herself and told Watson they were working.

In August of 2016, Grandview learned Davidson had tested positive for C. diff.  On four occasions from September of 2016 to January of 2017, Davidson requested and received FMLA leave in relation to her C. diff infection.  Davidson stated in her declaration that Watson told her she should return to work as soon as possible because the hospital was short staffed, and, while she was on leave, repeatedly told her she should look for another job.  Davidson returned to work on January 13, 2017.  Upon her return to work, Davidson requested that she not be required to enter the room of a patient infected with C. diff and submitted a note from her doctor recommending that she avoid interacting with patients infected with C. diff.  On February 15, 2017, Grandview's human resources (HR) director, Jeri Wink, told Davidson she would not be required to enter the room of a patient infected with C. diff until her doctor "no longer feels this is an issue" or unless her

4

declining to enter the rooms of infected patients became too burdensome for Grandview.

## C.  *Disciplinary Actions and Ankle Injury*

In 2017, for the first time in her career, Davidson was the subject of formal disciplinary actions at Grandview, though she had received counseling in response to complaints in the past.  The first disciplinary action occurred on February 14, 2017.  Two patients had complained to Gretchen Cassavoy, a nurse and the assistant director on the cardiac floor, about Davidson's failure to properly assist them in relation to their home health care choices and discharge planning, and the second patient had also complained that Davidson was condescending.  In addition, a doctor complained of Davidson's lack of responsiveness and dismissive behavior.  As a result of these complaints, Watson met with Davidson and issued her a documented verbal warning.

Regarding the patient complaints, Cassavoy's email to Watson referred to "Jamie," which is not how Davidson spells her first name, but is the spelling used by Davidson's coworker, Jamie Callis.  Watson testified she could not be sure whether the email referred to Davidson or Callis, but stated Davidson would have told her if the complaints referred to Callis.  Though Watson signed the disciplinary action form, she testified she had not seen the underlying complaints and only agreed to do so because she feared she would otherwise be fired.

5

On March 1, 2017, Davidson injured her ankle at work. After being seen by a doctor and surgeon, she returned to work on March 13, 2017, wearing a walking boot for her injury.

Davidson's second disciplinary action occurred on March 15, 2017. A doctor complained that on March 8, 2017, Davidson failed to communicate with him and a patient's family regarding the patient's discharge plan. Watson issued Davidson a written warning for substandard work based on the doctor's complaint.

On May 8, 2017, Davidson had ankle surgery. Later that month, she filed a workers' compensation lawsuit against Grandview based on her ankle injury and C. diff infection. Davidson then requested FMLA leave for the period of March 1, 2017, to June 23, 2017. Davidson had exhausted her FMLA leave as of May 30, 2017, so her request was only partially granted. Davidson therefore took a combination of FMLA and personal leave until June 19, 2017. Davidson then returned to work, but she had frequent doctor's appointments due to her ankle injury and related physical therapy. Upon her return to work, Davidson was counseled not to discuss her lawsuit or medical conditions with her coworkers, who had complained such discussions made them uncomfortable.

Davidson's third disciplinary action occurred on July 24, 2017. A nurse and nurse practitioner separately complained to Watson that Davidson had provided substandard discharge planning to patients, in one instance delaying a patient's

discharge by nine days.  Watson issued Davidson another written warning for substandard work based on these two complaints.  Under Grandview's progressive disciplinary policy, this was a final warning, and Davidson was on notice that the next disciplinary action against her could result in her termination.

Several days after the third disciplinary action, Davidson failed to return to work after a doctor's appointment.  Watson expressed her frustration in an email to Colvert, stating she was "so tired of this crap" and was "screaming out loud" and "so over this."

D.  *Additional Leave, Return to Work, and Termination*

Davidson had a second ankle surgery on August 24, 2017, and she took personal leave from this date until October 23, 2017.  While Davidson was on personal leave, Grandview hired two social workers, who were set to complete their orientation period around the time of Davidson's return.  On October 13, 2017, Davidson received a letter from Grandview signed by Wink.  The letter stated, in relevant part, that Davidson had exhausted her FMLA leave and had been placed on personal leave, and that Grandview could not guarantee she would be returned to her original position, or any position, upon her return from personal leave.  Wink testified at deposition that this portion of the letter was standardized text issued to any employee who had exhausted her FMLA leave.

7

Several days later, Colvert emailed Wink about moving Davidson to another floor upon her return. Colvert stated that if Davidson was transferred, it would be apparent whether she was "performing her job as she should be," and she asked whether Grandview would then "go through the disciplinary steps." In a separate email with the subject line "email," Wink wrote: "Let's discuss in person. Certain things don't need to be mentioned in email (everything is discoverable) and we have to be careful how certain comments can be interpreted."

Davidson returned to work on October 24, 2017, without any restrictions regarding her ankle. She was transferred from cardiology on the seventh floor to the medical/surgery unit on the ninth floor. The transfer did not result in any change to her job duties, pay, or benefits.

On October 25, 2017, Davidson met with Michael Dean, the director of the Short Stay Unit on the ninth floor, and other staff members. Davidson testified she did not mention her lawsuit during this meeting, but instead asked if she could have a chair because she had been "made to come back to work before [her] foot was healed" and "needed to sit down."

On October 26, 2017, Rick Smith, a patient's son, complained about Davidson to Jennifer Perrigin, a charge nurse on the ninth floor. Smith told Perrigin that Davidson was more focused on her own medical issues and problems with Grandview than she was on his mother's situation. He asked Perrigin if there

8

was anyone else he could talk to because he did not want to deal with Davidson anymore. Perrigin reported the complaint to Michael Dean, director of the Short Stay Unit on the ninth floor. She also told Dean that Davidson had made comments to her and other staff members about her workers' compensation lawsuit and medical issues.

That same day, Dean spoke to Smith, who informed him Davidson was not concerned about his mother, had spent 25 of 30 minutes in his mother's room complaining in detail of her own medical problems, and had not listened to anything he had said regarding his mother's situation. Dean sent his summary of Smith's complaint to Colvert, who was by then Davidson's supervisor, and also to Callis and Julie Soekoro, Grandview's chief financial officer. Colvert also forwarded the complaint to Wink and Soekoro. Soekoro stated Davidson's conduct warranted disciplinary action, was highly inappropriate and unprofessional, and would be addressed through the appropriate HR process. In a follow-up email on October 26, 2017, Dean reported Davidson was discussing her lawsuit against Grandview with staff and had discussed this issue with him personally. Later that day, when Soekoro asked for details, he added Davidson had also informed his team she would not go into the room of any patient who had C. diff. After receiving Dean's complaint about Davidson's discussion of her lawsuit and her medical issues, Soekoro emailed Wink, Colvert, and Callis, stating: "Write

up #2 today.  Michael Dean and his charge nurse apparently heard far more than was appropriate or solicited."

The following morning, Davidson emailed Callis and told her she wanted to discuss the situation with Smith or have him present because she did not want to get "railroaded again."  Davidson then called Smith personally and emailed Callis, Colvert, and Wink to report he had "no complaints" regarding her discharge planning.  Dean, however, reported to Soekoro and others that Smith had come to his office that morning and told him Davidson was irrational and that he wanted his mother to be discharged as soon as possible.  That same day, Soekoro met with Wink and Drew Mason, Grandview's chief executive officer, and the decision was made to terminate Davidson's employment.

Three days later, on October 30, 2017, Wink and Colvert met with Davidson and informed her of the termination decision.  According to the disciplinary action form, the termination was based upon: (1) Smith's complaints about Davidson; and (2) the fact Davidson discussed her lawsuit and medical issues with other employees.

## II.  DISCUSSION

### A.  ADA Discrimination and Retaliation

Under the ADA, employers are prohibited from discriminating against qualified employees based on disability "in regard to . . . discharge of

employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA also makes it unlawful for an employer to retaliate against employees who have "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." *Id.* § 12203(a). To establish a prima facie case of ADA discrimination, a plaintiff must show that she: (1) was disabled; (2) was a qualified individual; and (3) was discriminated against because of her disability. *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255-56 (11th Cir. 2007). To establish a prima facie case of ADA retaliation, an employee must show: (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) a causal connection exists between the conduct and the adverse action. *Batson v. Salvation Army*, 897 F.3d 1320, 1329 (11th Cir. 2018).

Where direct evidence of an employer's intent is lacking, we analyze ADA discrimination and retaliation claims under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Holly*, 492 F.3d at 1255; *Batson*, 897 F.3d at 1328-29; *see also Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000) (noting "[t]he burden-shifting analysis of Title VII employment discrimination claims is applicable to ADA claims"). Under this framework, once a plaintiff meets her prima facie burden, the defendant must present a legitimate, nondiscriminatory reason for its adverse actions. *Cleveland v.*

11

*Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004).  The

employee must then demonstrate that the employer's proffered reason was

pretextual.  *See id.*  To establish pretext, a plaintiff must show the employer's

proffered reason was false and the real reason was discrimination.  *See St. Mary's*

*Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).

A plaintiff can show pretext by demonstrating "such weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions in [the

employer's] proffered legitimate reasons for its action that a reasonable factfinder

could find them unworthy of credence."  *Springer v. Convergys Customer Mgmt.*

*Grp. Inc.*, 509 F.3d 1344, 1348 (11th Cir. 2007) (quotation marks omitted).

"Provided that the proffered reason is one that might motivate a reasonable

employer, an employee must meet that reason head on and rebut it, and the

employee cannot succeed by simply quarreling with the wisdom of that reason."

*Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).  The

pretext inquiry "centers on an employer's beliefs," and the question is whether the

employer is dissatisfied with an employee for "non-discriminatory reasons, even if

mistakenly or unfairly so," or instead merely used those reasons as cover for

discrimination.  *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1266 (11th Cir.

2010); *see also E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176-77 (11th

Cir. 2000) (providing an employer is entitled to rely on a good faith belief an

employee has committed professional misconduct and stating pretext cannot be demonstrated by showing the employer was mistaken).

On the other hand, "the *McDonnell Douglas* framework is not, and was never intended to be the *sine qua non* for a plaintiff to survive summary judgment in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). A plaintiff will also survive summary judgment if she presents "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (quotation marks omitted). Such a convincing mosaic may consist of "evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systemically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quotation marks and ellipsis omitted).

Here, we assume without deciding that Davidson established a prima facie case of discrimination and retaliation under the ADA based upon her termination from Grandview.[2] We further conclude Grandview proffered legitimate,

---

[2] The district court determined the only adverse employment action for the purposes of Davidson's ADA claims was her termination because her Equal Employment Opportunity Commission charge was timely only as to her termination. Davidson does not challenge this finding on appeal, and she has therefore abandoned any ADA claim based on the pretermination disciplinary actions. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).

nondiscriminatory reasons for terminating Davidson: (1) Smith's October 2017 complaints about Davidson, and (2) Davidson's discussion of her lawsuit and medical issues with hospital staff.  We therefore turn to the question of whether there is sufficient evidence in the record from which a reasonable jury could find Grandview's reasons for Davidson's termination were pretextual.

We conclude Davidson has failed to carry her burden in demonstrating the reasons for her termination were a pretext for unlawful discrimination or retaliation.  Regarding Smith's complaints, Davidson argues it was not uncommon for people to ask about her injury because of the boot she wore, and that social workers would often follow up in response to patient complaints about discharge plans.  As to her discussion of her lawsuit and medical issues with staff, Davidson asserts that she did not specifically mention her lawsuit but instead asked for a chair during a meeting because she was made to return to work before her foot had healed.  These arguments, however, essentially quarrel with the wisdom of Grandview's business decision and fail to show Grandview lacked a good faith belief Davidson had committed the misconduct that formed the basis for her termination.  *See Chapman*, 229 F.3d at 1030; *Alvarez*, 610 F.3d at 1266.

Davidson also contends there is a genuine issue of material fact as to pretext because there is evidence in the record showing Grandview had a plan in place to terminate her.  As evidence of this plan, Davidson points to: (1) the October 13,

14

2017, letter in which Grandview stated it could not guarantee her reemployment; (2) her transfer to the ninth floor; and (3) the fact Grandview hired two new social workers during her absence. This evidence, however, fails to reveal a discriminatory plan to terminate Davidson that renders Grandview's proffered reasons for her termination "unworthy of credence." *See Springer*, 509 F.3d at 1348 (quotation marks omitted). The portion of the October 13, 2017, letter that Davidson relies on was standardized text issued to any employee who had exhausted her FMLA leave, not a message directed to Davidson because of her disabilities. As to the transfer, even assuming the ninth floor was a more challenging work environment, Davidson was released to work without any restrictions on the use of her ankle, and the October 2017 emails between Colvert and Wink do not reveal any discriminatory animus. The fact Grandview filled staffing needs by hiring additional social workers likewise does not suggest a predetermined plan to eliminate Davidson because of her disabilities or indicate Grandview's proffered reasons for terminating Davidson were false.[3]

---

[3] Davidson also argues that a case manager, Teresa Blocker, asked her to violate federal privacy law by looking up Blocker's personal medical record. Davidson submitted in her declaration that she believed she was being set up to violate the law so that Grandview would have cause to terminate her, and Blocker "later confirmed this was true." This evidence does not bolster Davidson's argument, however, as there is nothing in Davidson's declaration to indicate how Blocker "confirmed" the setup or whether any decisionmaker with respect to Davidson's termination had been involved.

Other pieces of evidence on which Davidson relies similarly fail to demonstrate pretext.  For instance, Davidson contends the first disciplinary action against her may have been intended for Jamie Callis because of how the name "Jamie" was spelled on Cassavoy's underlying complaint, and that Dean "had issues" with her because she had made unspecified complaints about him in the past.  But these arguments offer only speculation as to whether Grandview did not honestly believe Davidson engaged in the underlying misconduct and are insufficient to create a triable issue of fact as to pretext.  *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (stating speculation does not create a genuine issue of fact for trial); *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (explaining plaintiff must provide significant probative evidence on the issue of pretext).  We are also not persuaded that the mere mention, in one of Dean's October 26, 2017, emails, that Davidson had requested an accommodation for her C. diff shows that her termination was linked to her infection or any other disability, as opposed to the misconduct complained of by Smith and Dean.

As further evidence of pretext, Davidson argues the record is replete with evidence that Watson, Colvert, and other colleagues expressed frustration with her use of leave due to her disabilities.  Davidson mainly discusses stray remarks that Watson made, such as Watson's comment that Davidson should look for another

16

job while she was on leave for C. diff, and the email in which she stated she was "screaming out loud" after Davidson failed to return to work after her doctor's appointment.   But Watson was not a decisionmaker with respect to Davidson's termination.  Indeed, Watson no longer worked at Grandview when the termination decision was made by Soekoro, Wink, and Mason.  On the record before us, without other probative evidence of pretext, remarks by Watson and other non-decisionmakers do not create a genuine issue of material fact as to pretext.  *See Rojas v. Fla.*, 285 F.3d 1339, 1343 (11th Cir. 2002) (stating that although stray remarks that are not directly related to an employment decision may contribute to a circumstantial showing of discriminatory intent, they must be read in conjunction with the entire record and considered with other evidence).

Davidson argues that in addition to demonstrating sufficient evidence of pretext under the *McDonnell Douglas* burden-shifting framework, she has also presented a "convincing mosaic" of circumstantial evidence that would allow a jury to infer intentional discrimination by Grandview.  *See Smith*, 644 F.3d at 1328.  Her "convincing mosaic" arguments, however, are the same as her pretext arguments, and they similarly fail to provide sufficient circumstantial evidence of discrimination or retaliation under the ADA.

17

*B. FMLA Retaliation*

We next turn to Davidson's FMLA retaliation claim. Under the FMLA, an eligible employee is entitled to 12 workweeks of leave during any 12-month period because of, *inter alia*, a serious health condition that makes the employee unable to perform the functions of her position. 29 U.S.C. § 2612(a)(1)(D). "[T]he FMLA protects the substantive rights it creates by prohibiting an employer from retaliating against its employee for engaging in activities protected under the Act." *Batson*, 897 F.3d at 1328 (citing 29 U.S.C. § 2615(a)(1)-(2)). To establish a prima facie case of retaliation under the FMLA, an employee must demonstrate that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. *Schaaf v. Smithkline Beecham Corp*., 602 F.3d 1236, 1243 (11th Cir. 2010).

Unless there is direct evidence of the employer's retaliatory intent in an FMLA retaliation case, we employ the burden-shifting framework established in *McDonnell Douglas. Id.* If the employee carriers her initial burden in establishing a prima facie case of FMLA retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. *Id.* The burden then shifts back to the employee to show the employer's proffered reasons were a pretext for discrimination. *Id.* at 1244.

Though the district court found Davidson had established a prima facie case of FMLA retaliation based on the March 15, 2017, and July 24, 2017, disciplinary actions, Davidson contends the district court erred in: (1) failing to consider the February 14, 2017, disciplinary action as another basis for her FMLA claim, and (2) failing to find a causal connection between her termination and her FMLA leave. She also argues the court erred in failing to find that Grandview's proffered reasons for its adverse actions—both the disciplinary actions and her termination—were pretextual.

We need not address Davidson's arguments regarding her prima facie case because we conclude Grandview proffered legitimate, nonretaliatory reasons for Davidson's disciplinary actions and termination, and Davidson failed to show those reasons were pretextual. As an initial mater, even assuming arguendo that Davidson had established a prima facie case of FMLA retaliation based on her termination, her pretext arguments with respect to termination fail for the reasons discussed above.

As to discipline, Grandview presented legitimate, non-retaliatory reasons for all three disciplinary actions: documented patient and staff complaints primarily concerning Davidson's failure to provide adequate discharge planning. Davidson has failed to identify any inconsistencies or implausibilities regarding these proffered reasons. Although Davidson again argues Watson and others were

19

frustrated with her taking leave, she has not produced evidence to suggest Watson did not in good faith base the disciplinary actions on the unsolicited complaints regarding Davidson's misconduct.  *See Alvarez*, 610 F.3d at 1266.  Davidson argues it is unclear whether the complaint underlying the first disciplinary action was about her or Jamie Callis, but this argument is speculative, as discussed above. She also contends her conduct did not warrant the second disciplinary action because she had provided the doctor with the information he required in the patient's chart, and that her conduct did not warrant the third disciplinary action because delays in a patient's discharge were not uncommon.  These arguments are without merit, as they merely quarrel with the wisdom of Grandview's actions. *See Chapman*, 229 F.3d at 1030.  Finally, though the disciplinary actions were close in time to Davidson's use of FMLA leave, this temporal proximity, without more, is insufficient evidence of pretext.  *See Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1138 n.15 (11th Cir. 2020) (en banc).

## III.  CONCLUSION

For the reasons above, we affirm the district court's decision granting summary judgment in favor of Grandview.

**AFFIRMED.**

20